PETER DUBIN AND SARAH DUBIN, PROSECUTORS, v. JACOB WICH, BUILDING INSPECTOR OF THE TOWNSHIP OF WAYNE, BOARD OF ADJUSTMENT OF THE TOWNSHIP OF WAYNE, AND THE TOWNSHIP OF WAYNE, IN THE COUNTY OF PASSAIC, DEFENDANTS.

Submitted January 18, 1938—Decided July 11, 1938.

470

---

Before Justices BODINE, HEHER and PERSKIE.

For the prosecutors, *Hunziker & Hunziker.*

For the defendants, *C. Alfred Wilson* (*Norman R. Wynne,* of counsel).

The opinion of the court was delivered by

HEHER, J.   The board of adjustment of the township of Wayne, in the county of Passaic, rejected prosecutors' application for a variation from the requirements of the municipal zoning ordinance, adopted pursuant to the authority conferred by chapter 274 of the laws of 1928 (*Pamph. L.* 1928, *p.* 696; *Rev. Stat.* 1937, 40:55-30, *et seq.*), to permit the erection within the "A Residence Zone," delimited by the ordinance, of a refreshment stand for use in conjunction with a golf driving range, established some time before under a permit limited to three years, and a fruit and vegetable stand at a point nearby; and the question for decision is whether the action so taken was arbitrary and capricious, and therefore an indefensible invasion of the right of private property.   We think not.

The *locus* does not abut a district wherein such structure or use is authorized by the zoning ordinance; and the test is whether the action assailed reasonably tends to subserve the policy underlying zoning, *i. e.,* whether it is justified by one or more of the considerations outlined in section 5 of the Zoning act, *supra.*   So appraised, we deem it to be a valid exercise of power.

It is not asserted that the zoning ordinance itself, in respect of the lands embraced within the "A Residence Zone,"

transcends the authority delegated by the legislature. There is no contention that the zoning regulations do not answer the requirement of section 5 of the statute, that they shall rest upon "a comprehensive plan," and be designed to "conserve" the "value of property" and to "encourage" the "most appropriate use of land throughout" the municipality.

In granting such an exception, the board of adjustment performs a *quasi*-judicial function essentially discretionary in character; and it is the settled rule that the exercise of a discretionary authority will not be disturbed unless palpably abused, *i. e.*, the action taken is arbitrary or capricious. The burden of proof of a justifiable variation rests upon the landowner. There is a presumption of a lawful exercise of power by the board of adjustment. *Phillips Oil Co.* v. *Municipal Council of Clifton,* 120 *N. J. L.* 13; *Schnell* v. *Township Committee of Township of Ocean,* 120 *Id.* 194; *Cook* v. *Board of Adjustment, &c., Trenton,* 118 *Id.* 372; *Feldman & Pivnick* v. *Board of Adjustment, &c., East Orange,* 6 *N. J. Mis. R.* 520.

The essential point made by the landowner is that the land is "not adapted to farming," and will yield no revenue if restricted in use as in the zoning ordinance laid down. The tract has a frontage of 614.5 feet on the Paterson-Hamburg Turnpike, a four-lane concrete highway that is heavily traveled. Immediately to the west there is a roadside inn or tavern. Directly to the east there is a building owned by the local grange which serves as a community meeting place and dance hall. A public library adjoins this building on the east, and to the east of that there is a public school. A florist's shop and a real estate office abut the highway some distance away. On the southerly side of the turnpike, diagonally across from prosecutors' property, a street known as Church Lane enters the highway. A tavern is located on the easterly corner, and a gasoline service station on the westerly corner, both within the area zoned for business. And directly opposite prosecutors' lands there is an airport with two hangars—one fronting on the highway one hundred and nineteen feet, and the other eighty feet. Not far distant is a nursery. But these

particular tracts were devoted to such uses at the time of the adoption of the zoning ordinance in 1930. It seems to be conceded that there has been no deviation or departure from the provisions of the ordinance.

While it is intimated that the zoning ordinance, as regards the provision respecting the size of the plot to be devoted to a single residence, is arbitrary and unreasonable, the gist of the argument is that prosecutors' land "is not suitable or desirable for residential purposes, having in view the immediate surroundings," but "more suitable for business;" and therefore the stated classification "has no relation to the purposes contemplated" by the zoning statute. It is said, by way of amplification, that "the regulations governing 'A Residence' districts, in so far as" they affect "the property of prosecutors," are "not made with reasonable consideration to the character of the district and its peculiar suitability for a particular use;" and that "it is absurd to say that a parcel of property lying between other business establishments, opposite an airport or flying field where frequent and daily operation of airplanes occurs, almost opposite several gasoline stations and other business establishments, is a desirable place to erect a dwelling house, and that it is not more suitable to carry on some business," and that therefore the board of adjustment should have allowed the requested variance from the terms of the ordinance.

The difficulty with this claim is that the ordinance, in obedience to the statutory command, lays down a broad, comprehensive scheme of development designed to subserve the statutory policy. The regulations, viewed as a whole and from the standpoint of the public at large, are made with "reasonable consideration * * * to the character of the district and its peculiar suitability for particular uses, with a view of conserving the value of property and encouraging the most appropriate use of land throughout such municipality;" and so the requirements of section 5 of the statute are met. While it seems that lands adjoining this particular plot are devoted to business, the district in the larger view is plainly better adapted to residential uses; and this must

necessarily be the touchstone of the reasonableness of the regulations. The vicinage has many natural residential advantages. There are desirable residences near prosecutors' plot—some erected since the enactment of the zoning ordinance. As stated, the immediate vicinity, with its school, library and grange hall, serves as a community centre entirely in keeping with a neighborhood distinctly residential in character. One-quarter mile to the west of the airport, a tract of land comprising fifty acres is being developed exclusively for residences on three-acre plots. Due primarily to its natural attractions, the whole section is predominantly residential.

The existence of non-conforming business uses in a relatively small portion of an area reasonably and naturally comprising a residential unit, does not serve to disable the municipality from so classifying the whole. Such is the case here. Considered as an entirety in relation to their surroundings, the lands so reserved for residential purposes are naturally and pre-eminently suitable for that use. They are situate three miles from the city of Paterson; and, under all the circumstances, it cannot be said that the action of the governing body, in dedicating them exclusively to suburban residential purposes, or that of the board of adjustment in refusing a variation, is in any real sense arbitrary or unreasonable. It goes without saying that the erection of vegetable and fruit stands, and kindred establishments, on the highway at this point will substantially militate against the desirability of adjoining lands for residential uses. It is by these gradual encroachments, individually of relative insignificance, that the integrity of the general scheme is undermined and ultimately shattered. One departure serves as justification for another; and, when the invasion is once permitted, those denied like consideration labor under a sense of grievous injustice.

The judgment of the defendant board of adjustment is accordingly affirmed, with costs.