BURMORE CO. AND WALTHER MATTHEWS, PROSECUTORS-
APPELLANTS, v. HERBERT C. SMITH, BUILDING IN-
SPECTOR OF OCEAN CITY, NEW JERSEY, BOARD OF
ADJUSTMENT OF OCEAN CITY, NEW JERSEY, AND THE
CITY OF OCEAN CITY, NEW JERSEY, DEFENDANTS-
RESPONDENTS.

Submitted October 27, 1939—Decided April 18, 1940.

542

For the appellants, *Bleakly, Stockwell, Lewis & Zink.*

For the respondents, *French B. Loveland.*

The opinion of the court was delivered by

PERSKIE, J. This is a zoning case. Burmore Co., and its tenant, Walther Matthews, appellants here and prosecutors below, seek to review the judgment of the Supreme Court affirming the judgment of the Board of Adjustment which in turn affirmed the action of the administrative officer (building inspector) who denied the application made by Walther Matthews for a permit to make an addition to his building more particularly hereinafter described.

The facts are stipulated. Burmore Co. is the owner of a lot at the boardwalk between St. James Place and First street, Ocean City, New Jersey. This lot has a boardwalk frontage of 130 feet and a landward depth of 100 feet. It also extends, the full width of 130 feet, oceanward of the boardwalk, 150 feet, more or less, to the high water line. The boardwalk is twenty-four feet wide and bisects this lot, which is designated on the official map of Ocean City as "O.F. 3, Lot 7 K." In the deed to Burmore Co., the land "is described as one lot."

There are two frame structures on this lot. One was constructed by Walther Matthews in 1932 pursuant to a permit granted by the city. The cost of construction, as stated in the permit, was $250. This structure is located 18.7 feet southwesterly from the southwesterly line of St. James Place and is 25.6 feet wide, 24.1 feet deep and sixteen feet high. The second structure was constructed in 1934, also pursuant to a permit granted by the city, by one Virginia Tinkler, another tenant of Burmore Co. The cost of construction, as stated in this permit, was $700. This structure is located at the corner of First street and the boardwalk, and is 16.25 feet wide and 22.5 feet deep. Both structures, since their construction, have been used during the summer months for the sale of bathing paraphernalia, cigars, candy, frankfurters, hamburgers, soft drinks and the like.

The land oceanward of the boardwalk has been and is being used by the public generally as a bathing beach. Additionally, Burmore Co., pursuant to city license, rents same to a tenant who in turn rents out the use of beach chairs and umbrellas thereon.

In this posture as to the use of the property, the city of Ocean City passed a zoning ordinance on March 16th, 1938. By this ordinance appellants' property was placed in the district or zone specified as "Zone 1—family residence districts." Thereafter, on April 26th, 1938, Walther Matthews applied to the building inspector for a permit to build an addition (sixteen feet by twenty-four feet) to his existing frame structure to be used chiefly to increase the store space and to provide a bedroom. The building inspector denied the permit. Appellants appealed to the Board of Adjustment which also denied the permit. Both denials were rested upon the premise that to grant the permit would be to extend or enlarge a non-conforming use of the structure.

On *certiorari*, Mr. Justice Porter, sitting alone, determined that the zoning ordinance was a proper exercise of power and that the action of the Board of Adjustment was neither arbitrary, nor capricious, nor unreasonable. Hence this appeal.

Many and varied are the assults made upon the zoning ordinance. But few of these assaults, in our opinion, require consideration in this cause.

1. Is the ordinance unreasonable? It is contended that the property in question was not properly zoned for residential purposes because the district was in fact commercial and not residential. Our careful study of the proofs impels the conclusion that there is no substance or merit to this contention. The non-conforming uses in this district are very few in number and consist for the most part of practically temporary structures.

If we bear in mind that the zoning amendment (paragraph 5, section VI, article IV) did not become a part of our constitution until October 18th, 1927, that our enabling act (chapter 274, *Pamph. L.* 1928, *p.* 696), did not take effect until April 3d, 1928, and that thereafter a municipality was obliged to exercise the powers conferred upon it (*R. S.*

40:55-30, 32), with due regard to the then existing use made of "buildings and structures" in each specified district (*R. S.* 40:55-48), it becomes increasingly clear that the problem of municipal zoning is not altogether free from difficulty. The legislature recognized that difficulty. In order, however, to observe the "spirit of the ordinance" and to administer "substantial justice," the legislature made provisions for the granting of exceptions to and variances from the terms of zoning ordinances to relieve, under special conditions, undue hardship. But the legislative *sine qua non* for the granting of a variance is that it "will not be contrary to the public interest." *R. S.* 40:55-39. Thus it has been held that "the existence of non-conforming business uses in a relatively small portion of an area reasonably and naturally comprising a residential unit, does not serve to disable a municipality from so classifying the whole." *Dubin* v. *Wich,* 120 *N. J. L.* 469; 200 *Atl. Rep.* 751. The proofs are plenary and clear that the specified district here has not assumed the characteristics of a business district. The photographs submitted of some of the typical houses in the district leave no doubt as to the fact that the district consists of high class private homes. Nor is there any proof to support the suggestion that the lands and structures thereon adjoining the boardwalk are usable only for business purposes. On the contrary, as already observed, the proofs fully support the claim that the section of the boardwalk embracing appellants' property is almost, if not entirely, exclusively residential.

In reaching that result we have not overlooked section (2) subdivision (b) of the ordinance which defines a lot as follows:

"(b) LOT. A lot is a parcel of land, the location, dimension and boundaries of which are determined by the latest official record; but no lot for building construction and/or usage as herein defined, shall hereafter be less in width and depth than the original lot as recorded, planned and filed for that section of the city in which said lot is located. For all land not plotted or subdivided as aforesaid a lot shall not be less in size than 35 ft. by 100 ft."

The suggestion is made in passing (it does not appear to be

argued *in extenso*), that this section is unreasonable. For it is said that "It limits the use of the 13,000 square feet for a single residence thus confiscating nearly 10,000 square feet of appellants' lot west of the boardwalk." Since this section of the ordinance is presently not involved in the case at bar, no opinion thereon is necessary and none is expressed.

We concur in the holding by the Supreme Court that, under the proofs and issues of the case at bar, the ordinance is not unreasonable. It does not trench upon any right vouchsafed appellants under either the State or Federal Constitution.

2. Is the ordinance certain, was it properly passed?

Section 3 of the ordinance specifies or creates five classes of districts or zones. This section fully satisfies that branch of the statutory requirements (*R. S.* 40:55-30-31), which have for their source the constitutional amendment which provides that "The legislature may enact general laws under which municipalities, other than counties, may adopt zoning ordinances limiting and restricting to specified districts and regulating therein, buildings and structures, according to their construction, and the nature and extent of their use, * * *." Paragraph 5, section VI, article IV, State Constitution.

Section 4 of the ordinance provides:

"Boundaries. The boundaries of each of the above created districts or zones are hereby established as shown on a map dated January 26th, 1938, as approved by the Board of Commissioners of the City of Ocean City and on file in the City Clerk's office. In case of uncertainty or disagreement as to the true location of any district or boundary line the determination thereof shall lie with the Board of Adjustment as hereinafter provided."

It is contended that the ordinance is fatally defective because the zones, their boundaries and limits, are not defined in the ordinance itself nor is the map to which reference is had, made a part of the ordinance. The contention is without merit.

While it is true that a zoning ordinance may not be "adopted, amended or repealed," until after public hearing with full opportunity to all those in interest to be heard, that the "ordinance and notice of the time and place of hearing"

must be published at least once in an "official newspaper" if there be one or otherwise in a "newspaper of general circulation in the municipality" and that the publication must take place "ten or more days prior to such hearing," *R. S.* 40 :55-34, it is also true that there is no requirement in the statute that the map be published.

But be that as it may, the ordinance does state, as we have already seen, that the boundaries of each district or zone created are in fact established on the map filed with the city clerk. True the usual practice is to state that the map is made a part of the ordinance, but we think it is quite clear, from the language used, that the map was intended to be and is in fact by reference made part of the ordinance. The copy of the map submitted to us, and undoubtedly available as an official record to all in interest, is free from any uncertainty.

In *State* v. *Morristown,* 34 *N. J. L.* 445, the Supreme Court was called upon to review two ordinances establishing street grade lines. The validity of the ordinances was attacked on the ground of uncertainty, in that, *inter alia,* both merely referred to a map on file. Mr. Justice Depue speaking for the court said (at *p.* 447), "The adoption of grade lines by ordinance, by reference to maps and profiles, is the usual, and indeed the only practical means of legislating on the subject. \* \* \*." That pronouncement stands unchallenged. In all reason, it applies with equal efficacy to the adoption of a zoning ordinance. *Cf. Willets* v. *Sea Girt,* 8 *N. J. Mis. R.* 479; 150 *Atl. Rep.* 777; 43 *C. J.* 543, § 844. We are entirely satisfied that the ordinance is certain and that it was properly published.

3. Should the permit have been granted upon the asserted ground that a mere continuation of a non-conforming use was sought? Our answer is in the negative.

The spirit of the Zoning act, as it has properly and frequently been said by our Supreme Court, "is to restrict rather than to increase any non-conforming use." *Conaway* v. *Atlantic City,* 107 *N. J. L.* 404, 407; 154 *Atl. Rep.* 6; *DeVito* v. *Pearsall,* 115 *N. J. L.* 323, 325; 180 *Atl. Rep.* 202; *Home Fuel Oil Co.* v. *Glen Rock,* 118 *N. J. L.* 340, 344; 192 *Atl. Rep.* 516. And we have approved the holding by the same

court that the "continuance of a non-conforming use is a continuance of the same use and not of some other kind of use." *Kensington Realty Holding Corp.* v. *Jersey City,* 118 *N. J. L.* 114, 115; 191 *Atl. Rep.* 787; *affirmed,* 119 *N. J. L.* 338; 196 *Atl. Rep.* 691.

The use which appellants made of their property at the time of the passage of the zoning ordinance is the authoritative standard for determining the use which they may continue to make of their property after the passage of the zoning ordinance. In other words, the non-conforming use must be the same both before and after the passage of the ordinance.

The holding in the cases of *Frank J. Durkin Lumber Co.* v. *Fitzsimmons,* 106 *N. J. L.* 183; 147 *Atl. Rep.* 555, and *Lamb* v. *A. D. McKee, Inc.,* 10 *N. J. Mis. R.* 649; 160 *Atl. Rep.* 563, is not to the contrary. As pointed out in the *Home Fuel Oil Co.* v. *Glen Rock* case, *supra* (at *p.* 345), in the Durkin Lumber case the use of the lot (storing lumber thereon) was the same before and after the passage of the ordinance, and in the Lamb case the whole lot (ten acres) was used for the removal of sand and gravel, even though only a part (one acre) of it was actually dug both before and after the passage of the zoning ordinance.

What appellants sought here was to extend or enlarge the non-conforming use which they had made of the structure at the time the zoning ordinance was passed. The permit to do so was properly denied.

We have considered all other points argued and find them to be without merit.

Accordingly, the judgment is affirmed, with costs.

(See dissenting opinion by Donges, J., reported herewith in 124 *N. J. L.* 550.)

*For affirmance*—THE CHIEF JUSTICE, TRENCHARD, PARKER, BODINE, HEHER, PERSKIE, WELLS, WOLFSKEIL, HAGUE, JJ. 9.

*For reversal*—CASE, DONGES, DEAR, RAFFERTY, JJ. 4.