CITY OF NEWBURYPORT *vs.* BURNLEY S. THURLOW & another.

Essex.    February 8, 1949. — March 7, 1949.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, & SPALDING, JJ.

*Zoning.  Newburyport.  Municipal Corporations,* Official map.

A map, bearing the legend, "Zoning Map of the City of Newburyport Massachusetts Prepared under the direction of the Zoning Committee by . . . [A] City Planning Consultant, . . . [M] Associate November 14, 1938," must have been the map referred to in and was sufficiently identified to constitute a part of a zoning ordinance enacted by

the city council in 1940, which divided the city into five classes of
districts, none of whose locations could be ascertained from the ordi-
nance itself, although such map was not separately adopted and was
not identified in terms in the ordinance by reference to legend, name,
date or other distinguishing marks and the only references to any map
therein were to "said map," "the map," or "the zoning map," where it
appeared that in 1945 the ordinance and the above described map,
together with all other ordinances of the city, were in a locked compart-
ment in the city clerk's office used for the keeping of the ordinances,
that there was no other zoning map on file in the office or known to the
city clerk, that the ordinance and that map exactly corresponded in the
number and names of classes of zoning districts, and that the ordinance
and that map were open to inspection by the public and were shown to
citizens making inquiries about the zoning ordinance, and it did not
appear that any other zoning map was in existence at the time of the
adoption of the ordinance.

The provisions of G. L. (Ter. Ed.) c. 41, § 81C, inserted by St. 1936,
c. 211, § 4, respecting an "official map" of a municipality, have no
relation to a zoning map.

BILL IN EQUITY, filed in the Superior Court on October 24,
1947.

The suit was heard by *Murray*, J.

*J. T. Connolly*, for the plaintiff.

*B. J. Lojko*, for the defendants.

RONAN, J. This is a bill in equity seeking to enjoin the
defendants from conducting a clam shucking plant, a clam
business, and a tin shipping container business upon certain
premises in violation of the zoning ordinance of the city.
The defendants admit that they maintain such a business
at the said location, which, the city alleges, has been zoned
as a general residential district in which the conduct of such
a business is prohibited. The defendants contend that
the ordinance itself, independently of a certain map which
they say was not a part of the ordinance, did not establish
the said district by metes and bounds or by any other
description with reference to streets, blocks or other physical
objects, or in any other manner by which its boundaries
may be determined. They concede that the bounds of the
district were plainly delineated upon and could be readily
ascertained from a certain map, but they contend that this
map cannot be considered a part of the zoning ordinance.

The judge sustained this contention, ordered the bill dismissed, and reported the suit to this court.

We have a transcript of that portion of the testimony which the parties with the approval of the judge stipulated was all the material evidence, together with an agreement as to material facts, a copy of the plan, and also the findings of the judge. The issue before the judge and before us is whether the map was a part of the zoning ordinance. The answer to this issue rests upon documentary evidence and undisputed facts. Nothing turns upon the credibility of witnesses.

The zoning ordinance was enacted in 1940. It divided the city into five classes of districts, none of which was described in the ordinance itself by metes or bounds or by any physical bounds. No one could ascertain the location of any of these districts by a mere reading of the ordinance. The boundaries of these districts were established by § III of the ordinance, which in so far as material provided that "The boundaries between districts are as shown upon said map"; that zone lines shall be property lines and the center lines of streets where they may be so interpreted, but where a boundary is otherwise indicated "it is [to be] determined by its location on said map." Boundaries indicated as approximately parallel to a street shall be construed as parallel thereto, "and if there is any variance between the scaled distance between the boundaries and the side line of the street and the distance as marked in feet upon the map, the latter shall govern." This section is the only provision contained in the ordinance fixing and establishing the boundaries of the various districts. The ordinance does not in terms identify the particular map by legend, name, date or other distinguishing marks to which it refers. It is merely referred to in this section as the map and in § XXXVI, providing for amendments to the ordinance, as "the zoning map." The words "the map" or "the zoning map" indicate that the city council had in mind a definite and specific map although there is no evidence, other than the passage of the ordinance, that it took any

separate action except to designate "the map" or "the zoning map" as the official zoning map of the city. Such action might have been proper, but it was unnecessary where the map is otherwise identified as the one to which the ordinance refers. The reference must have been to a map which was then known to the city council and with which it was familiar. The ordinance would be meaningless without the map locating the districts. It was a map which was then in existence and which showed a division of the city into five classes of districts or zones and no more, comprising general residential, agricultural, general business, highway business and industrial districts. It would be a most unusual coincidence if a plan showing the same combination of classes as dealt with in the ordinance was not the one which was intended to be made a part of the ordinance, especially when such a plan was required to define the boundaries of the various districts. The fact is that the ordinance and the map exactly correspond in the number of classes and the name of each class. A zoning map prepared in 1938 apparently in connection with the planning board corresponds to the attributes of the map referred to in the ordinance in so far as the details of the map may be gleaned from the ordinance. That map bore the following legend:

ZONING MAP

of the

CITY of NEWBURYPORT

Massachusetts

Prepared under the direction of the Zoning Committee
By   Frederick Johnstone Adams   City Planning Consultant
Victor Martin   Associate                November 14, 1938

There is no evidence that any other zoning map was in existence when the zoning ordinance was enacted. No question is raised as to the accuracy of this map or that it is in any way inconsistent with any of the written provisions of the ordinance. The contention simply is that it has not been sufficiently identified as the one mentioned in the

ordinance.  We have already discussed the corresponding features of the ordinance and this map.  Besides, there was the testimony of the city clerk, which the judge apparently adopted as true, to the effect that when she assumed the office of city clerk in January, 1945, the zoning ordinance and this zoning map, together with all the other ordinances of the city, were in a locked compartment used for the keeping of the ordinances, that there was no other zoning map on file in the office, that she never knew of any other zoning map, and that the zoning ordinance and the map were open to inspection of the public and were shown to citizens making inquiries about the zoning ordinance.  We need not cite authorities holding that there is a presumption of regularity in the conduct of public officials or decisions holding that the records of a city clerk are conclusive evidence of the facts recorded, for we are here dealing only with a question of fact where the entire evidence points in a single direction.

The city council could adopt an ordinance complete in itself or it could, as it did in this instance, adopt one fixing the location of the various districts by a map.  The statute, G. L. (Ter. Ed.) c. 40, § 27, as appearing in St. 1933, c. 269, § 1, then in force, authorizing the passage of zoning ordinances, does not require a city council to adopt a zoning map.  If the council drafts an ordinance which would be incomplete and unintelligible without a map, it can supplement the ordinance by any map which is available and suitable for the purpose.  The objection that the map selected could have no validity because it was not recorded in the registry of deeds in accordance with G. L. (Ter. Ed.) c. 41, § 81C, inserted by St. 1936, c. 211, § 4, is untenable.  The map described in that section is unrelated to zoning and serves an entirely different purpose.

It is plain that the zoning map in the custody of the city clerk is the map referred to in the zoning ordinance and is a part of that ordinance.

A decree is to be entered enjoining the defendants from

using the premises mentioned in the bill for a clam shucking plant, a clam business and a tin shipping container business, together with costs.

*So ordered.*