PEARCE ET AL., APPELLANTS, *v.* CITY OF YOUNGSTOWN ET AL., APPELLEES.

(No. 3715—Decided October 5, 1954.)

*Messrs. Manchester, Bennett, Powers & Ullman,* for appellants.

*Mr. Felix Mika,* director of law, and *Mr. Frank Battista,* for appellees city of Youngstown and Robert L. Findlay, building inspector.

*Messrs. Hammond & Hammond,* for appellee Youngstown Metropolitan Housing Authority.

PHILLIPS, J.  In this opinion, defendant city of Youngstown, an Ohio municipal corporation operating under a home-rule charter of its own adoption, will be referred to as the city, the Youngstown Metropolitan Housing Authority, a corporation organized under the housing laws of the state of Ohio, will be called the housing authority, and Robert L. Findlay, the City Building Inspector, will be designated as the inspector.

Plaintiffs, residents of the city of Youngstown living in the immediate vicinity of the area where the housing authority proposes to erect the Kimmelbrook Housing Project, appeal to this court on questions of law from a judgment of the Court of Common Pleas entered for defendants in plaintiffs' action therein to permanently enjoin the erection of such project.

The housing authority acquired by appropriation and purchase approximately 18 acres of land comprising a portion of Youngstown city outlot number 1343 and city lots numbers 43420 to 43456, inclusive, for the purpose of erecting a multiple unit low-rent public housing project thereon known as Kimmelbrook Homes.

By the amended permanent city ordinance originally duly enacted in 1928, the westerly 40 feet of such tract of land, being about one-fiftieth of the total area involved, was zoned by the city as Residence B and the remainder thereof as Residence A. That ordinance provides that, except by special permission granted by the Board of Zoning Appeals, single family dwellings only may be erected in Residence A zones, and that in Residence B zones single family dwellings, double dwellings and row houses up to eight units may be erected.

On March 2, 1954, the city council adopted zoning ordinance number 57738 as an emergency ordinance rezoning such tract of land, which, with the exception of that portion thereof already zoned as Residence B, was rezoned from Residence A to Residence B to permit the housing authority to proceed with the erection of Kimmelbrook Homes in accordance with the request of the housing authority made on April 21, 1953, which plaintiffs contend is illegal.

That zone change was made subject to the provisions that a 50-foot strip of land along the easterly side of such tract where a private residential allotment, known as Thornhill Village,

abutted the property in controversy should be maintained as a wooded area, and that a substantial permanent fence be built along the easterly line thereof.

Plaintiffs' expert witnesses testified that, as a result of a thorough canvass investigation of the area involved, it was their opinion as realtors of long experience that the entire locality, including that rezoned tract, was well established in 1936 as a single family residence area; and that the erection of a multiple unit low-rent housing project in the rezoned area would substantially depreciate the value of the residences in the vicinity of such project.

Relying on the presumption of the validity of zoning ordinance number 57738, defendants introduced no evidence in the Court of Common Pleas. Thereupon, plaintiffs rested their case, which was submitted to the Court of Common Pleas upon the pleadings and the testimony of two of plaintiffs' expert witnesses, such witnesses having been examined and cross-examined and also examined upon the stipulation of facts.

The trial judge held and entered judgment that plaintiffs' evidence was not sufficient to overcome the presumption of the validity of such ordinance.

Plaintiffs contend that such "presumption, like any other presumption, is not evidence"; and that, "since the plaintiffs had produced substantial and uncontroverted evidence impugning the validity of the ordinance, the presumption (of the validity of the ordinance) disappeared, and the trial court was required to consider the matter before it as if the presumption had never existed, which was precisely what it did not do, as the opinion (of the trial judge) clearly reveals."

Plaintiffs contend further that "the legal principle applicable to the situation then presented was:

"* * * if the testimony of an interested witness is not, on its face, open to reasonable doubt, and there is no proper ground for hesitating to accept it as true, and it is not contradicted by direct evidence or by any legitimate inference from the evidence, or opposed to probabilities, or in its nature surprising or suspicious, there is no reason for denying to it conclusiveness." 39 Ohio Jurisprudence, 813, Section 188.

Further, plaintiffs contend that the city "is without power,

as a matter of law, to change the original classification under a comprehensive zoning plan of a parcel of land when the area of which it is a part has continued to conform to the original classification and persons have purchased and improved property in the area in reliance on the existing classification'' unless the change is for the public good, which it is contended is not the fact in this case.

In answer to such contention of plaintiffs, this court is of the opinion that the zoning commission did not abuse its discretion in finding that the low-rent housing project would be for the public good.

Defendants propound the following query and argue that query in the negative:

"Is Youngstown city ordinance No. 57738, passed March 2, 1954, and approved by the mayor of the city of Youngstown on March 11, 1954, pursuant to Youngstown city ordinance No. 54346 (the co-operation agreement ordinance), an unreasonable, arbitrary or capricious exercise of the police power by the city council of the city of Youngstown?''

The test in this appeal is whether the rezoning is for the general health, safety and welfare or whether by such rezoning the city council was guilty of an unreasonable, arbitrary or capricious exercise of its police power, which it was incumbent upon plaintiffs to show.

The presumption of the validity of the ordinance stands until plaintiffs clearly establish the contrary.

The burden was upon plaintiffs to prove that the ordinance was unreasonable and the result of a capricious exercise of council's legislative power, which burden they failed to sustain.

The judgment of the Court of Common Pleas is affirmed.

*Judgment affirmed.*

GRIFFITH and NICHOLS, JJ., concur.