327 P.2d 321

CITY OF ALAMOGORDO, A Municipal
Corporation, Plaintiff-Appellee,

v.

W. G. McGEE, Defendant-Appellant.

No. 6342.

Supreme Court of New Mexico.

June 24, 1958.

Albert J. Rivera, William V. Cheek, Alamogordo, for appellant.

Darden & Caffey, Las Cruces, Brenton, Boyce & Wilkinson, Alamogordo, Mary Simpson Goggin, Las Cruces, for appellee.

SADLER, Justice.

The defendant, as an appellant before this court, complains of a judgment against him in the district court of Otero County restraining him from operating and maintaining a trailer camp or trailer park on a specified lot in a certain block, within Zoning District "A" of the City of Alamogordo, Otero County, New Mexico; and, especially, from keeping or maintaining house trailers on said premises or elsewhere in Alamogordo, without securing a permit so to do from the City Building Inspector.

The trial was before the court at the conclusion of which certain findings and con-

clusions were announced and embraced within a decision of the court, filed with the clerk. At the outset of his findings, the trial judge related authority for the governing ordinances to the enabling statute under which they were enacted, namely, L.1927, c. 27 (1953 Comp. §§ 14–28–9 to 14–28–18). He recited that pursuant to such statute the municipality had enacted Zoning Ordinance No. 149 on April 3, 1950, followed by enactment by the City of Alamogordo, when its status to that of city had been accomplished, of Ordinance No. 176 on April 14, 1953, the latter being, as the judge viewed it, in effect, only a reenactment of Ordinance No. 149. Furthermore, he saw in the enactment of said ordinances a substantial compliance with all statutory requirements.

Each of the ordinances provided for a District "A", restricted to single family dwellings. The defendant, W. C. McGee, was found to be the owner of Lot 2, Block 98, in the City of Alamogordo, located within and a part of District "A", mentioned above, and within the corporate limits of said City. Likewise, he was found to be keeping and maintaining house trailers on said premises, which were not, as the judge saw them, "single family dwellings", within the purview of Ordinance No. 149 and Ordinance No. 176. Indeed, the defendant was said to be using said premises for the operation and maintenance of a trailer camp or park, a use not permitted in Zoning District "A" under the restrictive provisions of said ordinances.

The Ordinances Nos. 149 and 176 provide that no trailer shall be used for occupancy anywhere within the corporate limits of the City (or Town) of Alamogordo without a permit from the Building Inspector, notwithstanding which the trailers kept and maintained on Lot 2, Block 98, have been used for occupancy without any such permit. The above described premises were neither used for, nor occupied by, house trailers at the time of the enactment of Ordinance No. 149 or Ordinance No. 176.

The trial judge further found that nowhere within the title or body of Zoning Ordinance No. 176 is it stated that Ordinance No. 176 is a supplement or amendment to Ordinance No. 149.

The foregoing facts were found by the trial court and are embraced in the decision filed in the case and from them certain conclusions of law were deduced. For instance, the court concluded that the enactment of Ordinance No. 149 and as well the enactment of Ordinance No. 176, each carried with it a presumption of validity which presumption had not been overcome as to either ordinance by any evidence produced by the defendant.

The court further concluded that the two Ordinances, Nos. 149 and 176 might be considered together as one ordinance and that

the substantial compliance shown in the enactment of each ordinance sufficed to meet statutory requirements. But, whether considered together, or separately, Ordinance No. 149 and Ordinance No. 176, constitute a valid zoning ordinance of the City of Alamogordo, as held by the court.

And, finally, the court concluded that the defendant, in keeping and maintaining, or permitting, house trailers on said lot, was violating the zoning ordinances of the City and that he should be enjoined "from keeping, maintaining, operating or using the said premises for the conduct or operation of a trailer camp or trailer park." Judgment was entered in conformity with the findings and conclusions so made, from which this appeal is prosecuted.

The defendant, appellant, has argued his appeal under two points. The first point is to the effect that a zoning ordinance must strictly follow the enabling statute to be valid. The second point challenges action of the trial court in considering together Ordinance No. 149 and Ordinance No. 176.

The initial point is further refined, or applied, to the factual situation here present by the declaration that the court erred in finding that compliance had been accomplished since exact and full compliance is required, and here only "substantial" compliance was found.

As already indicated the two ordinances in question, Ordinance No. 149 and Ordinance No. 176, were enacted pursuant to an enabling statute known as L.1927, c. 27 (1953 Comp., §§ 14–28–9 to 14–28–18). The earlier ordinance was enacted on April 3, 1950, known as Ordinance No. 149 and the later one, Ordinance No. 176, which was practically a duplication of the earlier one, was enacted on April 14, 1953. The later one was, in effect, a complete enactment of the earlier one. Each was enacted prior to the violations charged against defendant took place, so that if either be valid, the trial court was correct in enjoining the defendant. Not only did each ordinance so proclaim, but the very nature of the ordinance itself rendered obvious the fact that it was enacted as a health and safety measure in an exercise of the police power of the city. Indeed, the defendant in no way challenges that each ordinance represents a valid exercise of the police power.

But say counsel for defendant, Ordinance No. 149 is invalid because it was never published and Ordinance No. 176 is bad because the public hearing provided by the enabling act, 1953 Compilation, § 14–28–12, following notice, was neither had nor given. The position of defendant is fairly stated by his counsel in the brief filed by them, as follows:

"* * * In this case Ordinance No. 149 was given adequate pre-passage treatment. Meetings were held,

notice was given, property owners were apprised of their rights. Ordinance No. 149 was invalid, however, for proper publication was omitted.

"Ordinance No. 176, on the other hand, was passed without any such notice, without meetings, without any property owner having a chance to protest or make himself heard. This ordinance was published. It is clear that both were inherently defective in meeting with the requirements of the enabling act. In the same way that failure to publish invalidated No. 149, so failure of notice and hearing should invalidate No. 176."

Counsel for defendant, appellant, as will be seen from his initial attack on the two ordinances challenged, insists nothing short of strict compliance will suffice. Indeed, he virtually admits that substantial compliance is shown but, say his counsel, that is not enough. Counsel for the City answer that substantial compliance is all that is required. They cite Hughes v. City of Carlsbad, 53 N.M. 150, 203 P.2d 995, 1000, in support of their claim that substantial compliance suffices. In the Hughes case where the statute required annexation proceedings should be accompanied by a "survey and a plat" of the contiguous area sought to be annexed and they were not, the court had this to say touching their absence:

"Since a plat represents an ocular view of the result of a survey—a visual demonstration of the work done—where every purpose of either a survey or plat has been achieved, as here, we think it would sacrifice substance to form to say there has not been substantial compliance with the statutory requirements in this particular. We hold with the trial judge that there has been."

In the following cases dealing with publication of proposed amendments to the constitution, the various courts dealing with the subject were satisfied with substantial compliance. Counsel for the plaintiff aptly suggests a stricter rule should not be imposed in a case such as this than in publication of a proposed amendment to the fundamental law. Compare, State ex rel. Hay v. Alderson, 49 Mont. 387, 388, 142 P. 210; Keenan v. Price, 68 Idaho 423, 195 P.2d 662; City of Jackson v. Nims, 316 Mich. 694, 26 N.W.2d 569. In re Initiative Petition, 197 Okl. 432, 172 P.2d 324; Whiteside v. Brown, Tex.Civ.App., 214 S.W.2d 844, W.E. dismissed.

We have held there is a presumption that public officials perform their duty. In Herrera v. Zia Land Co., 51 N.M. 390, 185 P. 2d 975, 976, we said:

"* * * but the law presumes that public officials perform their duties until the contrary is shown."

Indeed, in the Herrera case we quoted approvingly from McQuillan on Corporations (Rev.Ed.), § 633, as follows:

> "The application of the presumptions of regularity and validity of the acts of officers of a municipal corporation has been uniform and is to be found in a multitude of decisions on almost every point presented by the ramification of the law relating to them."

Accordingly, and in conformity with this principle, it is held in Pearce v. City of Youngstown, 100 Ohio App. 22, 135 N.E. 2d 430, 431, as reflected in second paragraph of the syllabus:

> "There is a presumption that a municipal ordinance is valid; and that presumption stands until it is clearly established that such ordinance is invalid."

Likewise, in City of Miami Beach v. Silver, Fla., 67 So.2d 646, 647, the court gave expression to the presumption of validity, as follows:

> "When a city council, after being duly authorized by legislative grant, enacts a comprehensive zoning code, the ordinance is presumptively valid. (Citations omitted). One who .assails such legislation must carry the burden of both *alleging and proving* that the municipal enactment is invalid."

True enough, the map of the zoning districts was not published with the ordinance. However, in both cases the limits of the zones were set forth in detail in the ordinance, and there was reference to a map which was made a part of the ordinance, and the place where it was found was stated in the ordinance as the office of the City Clerk, being there available and open to inspection by anyone interested.

There are authorities both ways on the effect of an omission to publish the map. Possibly, numerically, a few more decisions declare it invalidates the ordinance than view the omission with such strictness. Decisions upholding the more liberal construction are City of Napa v. Easterby, 76 Cal. 222, 18 P. 253; Burmore Company v. Smith, 124 N.J.L. 541, 12 A.2d 353; City of Newburyport v. Thurlow, 324 Mass. 40, 84 N.E.2d 450; City of Tucson v. Stewart, 45 Ariz. 36, 40 P.2d 72, 96 A.L.R. 1492; Village of Northport v. Walsh, App.Div., 269 N.Y.S. 966, affirmed in 265 N.Y. 458, 193 N.E. 270; City of Milwaukee v. Krupnik, 201 Wis. 1, 229 N.W. 43.

Among cases cited, contra, by counsel for defendant may be cited Village of Durand v. Love, 254 Mich. 538, 236 N.W. 855; Barber Co. v. City of Minneapolis, 227 Minn. 77, 34 N.W.2d 710; Fierst v. William Penn Memorial Corporation, 311 Pa. 263, 166 A. 761. See, also, the case of City of Creston v. Center Milk Products Co., 243 Iowa 611, 51 N.W.2d 463, where cases pro and con on the proposition are

listed, though the court found it unnecessary to determine the matter in that case. Certainly, here as in the New Jersey case of Burmore Company v. Smith, supra, there is no specific requirement that the map be published and failure to publish it was held not to invalidate the ordinance.

■■ We hold that under the facts here present, the ordinance, itself, containing such data on boundaries of the district as each does and referring to a map on file with the City Clerk, where any one so desiring can inspect it, every purpose of publishing the map was achieved. It would be to "sacrifice substance to form" to nullify the ordinance because of this omission, just as we held in Hughes v. City of Carlsbad, supra, on slightly different facts. See, also, DeWitz v. Joyce-Pruitt Company, 20 N.M. 572, 151 P. 237, where the same principle, touching notice, was applied to a state of facts which, though different, was to serve the same purpose as the publication here.

Both ordinances were introduced in evidence and, as shown by authorities, each carried with it a presumption of validity. As to Ordinance No. 149, defendant says it is bad because no publication, or an insufficient publication was had. As to Ordinance No. 176, it is assailed primarily because the pre-passage proceedings such as public hearings and notice thereof were not had or given in conformity with the requirements of 1953 Comp. § 14–28–12. Nor was a map of the zoning district published along with publication of the ordinance. We have already held that in the light of what was stated in Ordinance No. 176, itself, as to boundaries of the district and as to existence of a map and where it could be found and inspected at the office of the City Clerk, we were not disposed to nullify the ordinance on account of failure to publish the map.

As to the other objection to Ordinance No. 176, about the pre-passage requirements touching public hearings and notice thereof, there is not one iota of evidence in the record that these requirements were not met. Counsel for defendant so assert but they offer no proof whatever on the question. In the absence of such proof, it will be presumed that these pre-passage requirements were met. As said in Herrera v. Zia Land Co., supra, where the question at issue was whether the Board of Trustees of the Town of Atrisco Grant had authorized the issue of certain deeds, they could only do so at regular quarterly meetings and the date borne by such deeds was not one of those dates. We said in that case:

"The date on which the issuance of the deeds was authorized was not one provided by statute, but the law presumes that public officials perform their duties until the contrary is shown. Daughtry v. Murray, 18 N.M. 35(42), 133 P. 101. A regular meeting once

convened may adjourn to a later date. * * *

"The burden was on the defendants to show that the June, 1939, meeting was not in fact an adjourned session of a regular quarterly meeting. They did not offer any proof on this point, but relied solely on the date of the meeting, and this defense therefore fails."

So here, in view of the presumption of validity attending the ordinance, and the due performance of duty by public officials, absent any proof to the contrary by the defendants, and there is none, it will be presumed the pre-passage requirements as to public hearings and notice thereof were had and given.

Counsel for the City of Alamogordo argue, persuasively, that Ordinance No. 149 was ratified and given vitality as to any claimed defects by the enactment of Ordinance No. 176, which they say was nothing more than a continuation thereof, citing our State v. Thompson, 37 N.M. 229, 20 P.2d 1030; McLain v. Haley, 53 N.M. 327, 207 P.2d 1013; Northern Texas Utilities Co. v. Community Natural Gas Co., Tex. Civ.App., 297 S.W. 904, and other authorities. We find it unnecessary to pass upon the validity of Ordinance No. 149, however, although given sanction by the trial judge in his findings and conclusions. If Ordinance No. 176 is valid, as we have held

it is as against the attacks made on it, the acts enjoined occurring after its enactment, that fact suffices to support the judgment of the trial court, even if Ordinance No. 149 be wholly void, a conclusion we in no manner draw.

Finding no error, the judgment of the trial court is affirmed.

It is so ordered.

LUJAN, C. J., and McGHEE, COMPTON and SHILLINGLAW, JJ., concur.