203 P.2d 995

## HUGHES et al. v. CITY OF CARLSBAD et al.

No. 5163.

Supreme Court of New Mexico.

March 9, 1949.

Caswell S. Neal and M. Rosenberg, both of Carlsbad, for appellants.

Reese & McCormick, of Carlsbad, for appellees.

SADLER, Justice.

The appellants, as plaintiffs below, some 200 in number, sued in the district court of Eddy County to enjoin the City of Carlsbad, a municipal corporation, its mayor and city council, from annexing to the municipality a certain area described in the complaint, lying west of, but contiguous to, the corporate limits of the city. From a summary judgment dismissing their complaint, the plaintiffs prosecute this appeal.

In conducting the proceedings for annexation the city has proceeded under 1941 Comp. §§ 14-606 to 14-608, both inclusive. The enabling act employed was adopted originally as L.1903, c. 105, consisting of seven (7) sections, but by successive amendments was reduced to its present form as found in 1941 Comp. §§ 14-606 and 14-608. See L.1935, c. 53, § 3 and L.1939, c. 204, § 2. Briefly, it provides that whenever the owners of the majority of the number of acres in the territory contiguous to any city, town or village sought to be annexed, sign and file a petition with the governing board of any city, town or village seeking annexation, accompanied by a survey and a plat of such territory, the city council or board of trustees, as the case may be, shall express by resolution consent to, or rejection of, the annexation. If consenting, a copy of the resolution, together with a copy of the plat of the territory so annexed, shall be filed in the office of the county clerk of the county in which said municipality is situated, "and from and after such filing, the said contiguous territory shall be included in and a part of said municipality for all purposes."

Thereupon, it becomes the duty of the mayor of the municipality, to cause to be published, in the same manner its ordinances are published, a proclamation giving notice that the contiguous territory has been annexed. The voters in the contiguous territory are privileged to vote in the next regular election and the governing board of the city, town or village is enjoined to provide by ordinance for the division of such territory into wards or for attaching same to wards already existing, to enable the voters therein to take part in the oncoming regular election.

The complaint alleged that the area which had been annexed was commonly known as "West Carlsbad," and was settled by approximately 4000 people, being adjacent and contiguous to the city of Carlsbad on the west, no part of which was in the corporate limits of the city; that a portion of the area, approximating slightly more than 500 acres, had been platted into lots, blocks, streets and alleys and was built up with homes, churches, schools

and business houses of various types, of both a public and private nature; but that approximately 312 acres on the western side of the annexed area consisted of dry, barren, sparsely settled, unimproved land, which could and would receive no benefits from municipal government. The plaintiffs further complained that to bring said area into the city would subject them to restrictive ordinances of the city, higher ad valorem taxes as well as other municipal taxes, excise and otherwise, without corresponding benefits.

The validity of the proceedings was assailed on the ground that the statute under which the city was acting had been repealed by a subsequent legislative enactment, namely, L.1947, c. 211, but that if not repealed, that the provisions of said statute had not been substantially complied with in that no survey of the annexed area accompanied the petition for annexation presented to the city council, and in that, if the 312 acres of dry, barren, unimproved land to the west, the inclusion of which was not in good faith, be excluded, the petition for annexation does not have signatures of owners of a majority of the number of acres sought to be annexed.

The answer of defendants set up the various steps taken by the municipality to, accomplish the annexation of the territory involved, including the proclamation of the mayor giving notice that the con-

tiguous territory had been annexed to the city, which was duly published, as required by law; and further alleging that, subsequently, the city was by ordinance divided into four wards and the annexed territory incorporated with one of the wards. Thereafter, as the answer disclosed, at the regular municipal election held on April 6, 1948, at which all legal voters in the annexed area so desiring were permitted to vote, an alderman was elected from the ward comprising the annexed area. In the same election, as appears from the answer, general obligation bonds were authorized as follows:

"Sewer Bonds                           $450,000.00
Public Buildings Bonds (for
  2 fire stations)                          50,000.00
Street Improvement Bonds          30,000.00"

Complaint and answer having been filed, the defendants forthwith moved for summary judgment on the ground that there was no genuine issue as to any material fact, attaching the supporting affidavits of twelve deponents. In due course, the plaintiffs likewise moved for summary judgment, also taking the position that there was no genuine issue as to any material fact and supporting their motion by the affidavits of various persons. After trial, the court entered its judgment in which, after denying the motion of plaintiffs and sustaining that of the defendants, it dismissed the complaint.

Whether the trial court erred in so doing is the question we are called upon to determine in passing upon this appeal.

A careful review of the record satisfies us that there was no error in denying the motion of the plaintiffs, and granting that of the defendants, for summary judgment. Attached to the affidavit of E. A. Roberts in support of defendants' motion were copies of all official acts and documents relating to the annexation. The findings of the city counsel recited in the resolution of annexation, read:

"(a) A large portion of the land has been platted and held for sale or used as town lots;

"(b) A large portion of the land is being held to be brought on the market and sold as urban property;

"(c) The lands furnish the abode for approximately 4,000 people and represent a portion of the actual growth of the city of Carlsbad beyond its legal boundaries;

"(d) The inhabitants of the area are in need of municipal facilities, including water, street lights, sewers, police protection and fire protection, and the lack of water and sewer facilities creates a potential and ever-growing menace to the health of the inhabitants of said area, as well as to the health of citizens of Carlsbad.

"(e) The land is chiefly valuable by reason of its adaptability for urban purposes;

"(f) Said area combined with the present City of Carlsbad actually constitutes one community unit;

"(g) Said area is contiguous to the present City of Carlsbad.

"(h) The owners of a majority of the acres in said area have signed the petition for annexation, the petitioners owning approximately 63.9% of the gross acreage in said area and approximately 74% of the gross acreage after elimination of the area comprising streets, alleys, parks, canals and other public ways;

"(i) It is to the best interests of the City of Carlsbad and to the inhabitants and owners of property in the area described in said petitions that said area be annexed to the City of Carlsbad."

█ It was demonstrated by affidavits, uncontroverted by the plaintiffs, that owners of acreage far in excess of the percentage required by law signed the petition for annexation. The plaintiffs do not claim otherwise, their only contention in this behalf being that the 312 acres of rocky, barren, unsettled and unplatted land on the western side of the annexed area, were not entitled to consideration in calculating the acreage signed up for by the owners. Accordingly, so far as issuable facts are concerned, unless we can say as a matter of law, because of the factors mentioned in connection with this acreage,

it is unsuitable for annexation as urban property, the motion for summary judgment by defendants was properly sustained. 1941 Comp. § 19-101 (56c); Ades v. Supreme Lodge Order of Ahepa, 51 N.M. 164, 181 P.2d 161; Schreffler v. Bowles, 10 cir., 153 F.2d 1; Lincoln Electric Co. v. Linde Air Products Co., 6 cir., 171 F.2d 223; Hazeltin Research, Inc., v. Automatic Radio Mfg. Co., D.C., 77 F.Supp. 493.

▆▆▆▆ Turning then to the questions of law raised, it is contended that the 312 acres mentioned were so unsuited for annexation purposes as to render their inclusion void as a matter of law, and of no effect in aid of the proceedings. We are unable to sustain this contention. The point to the contention is that, if excluded, as they claim and defendants deny, there is not sufficient acreage signed for by owners to make up the necessary majority thereof called for by the enabling act. But the city council, as already shown in the resolution for annexation, had found that the area annexed is chiefly valuable by reason of its adaptability for urban purposes and that when combined with the City of Carlsbad, the annexed area constitutes but a single community unit. The reasonableness of the extension of corporate boundaries is to be determined by considering the annexed area as a whole. "The question is not whether it is reasonable in each and every part." 1 McQuillin Municipal Corporations, Rev.Ed., 809.

And the power to annex being a legislative function, in exercising that power great latitude must necessarily be accorded the legislative discretion, "and every reasonable presumption in favor of the validity of its action must be indulged." 37 A.J. 645; McGraw v. Merriman, 133 Md. 247, 104 A. 540, and annotations in 27 L.R.A. 739 and 64 A.L.R. 1335.

The author of the text on Municipal Corporations, in 37 A.J. at page 644 states:

"It has been laid down that municipal limits may reasonably and properly be extended so as to take in contiguous lands, (1) when they are platted and held for sale or use as town lots; (2) *whether platted or not, if they are held to be brought on the market and sold as urban property when they reach a value corresponding with the views of the owner;* (3) when they furnish the abode for a densely settled community, or represent the actual growth of the municipal corporation beyond its legal boundary; (4) when they are needed for any proper town purpose, as for the extension of its streets, or sewer, gas, or water system, or *to supply places for the abode or business of its residents,* or for the extension of needed police regulation; and (5) *when they are valuable by reason of their adaptability for prospective urban uses,* although the mere fact that their value is enhanced by reason of their nearness to the corporation will not

afford a ground for their annexation, if it does not appear that such value is enhanced on account of their adaptability to urban use, * * *." (Emphasis added.)

It was shown by the supporting affidavits of the defendants that the area embraced in the 312 acres, although unplatted (save as to 40 acres which was platted prior to taking of certain depositions) is held to be brought on the market for sale as urban property. Also, that the area was needed to accommodate the growth which the City of Carlsbad was reasonably expected to attain within eight years. Furthermore, it was conceded that not one of the plaintiffs owns lands within the 312 acres and that the persons who do own it all were on the petition for annexation as signers. Counsel for defendants questions the right of plaintiffs owning none of the 312 acres, to challenge its inclusion. This we need not decide. The defendants present figures to show that the required acreage is signed up for annexation, even though the 312 acres be excluded, if streets and alleys are left out of the calculation, as they say properly may·be done. However, in view of the conclusion reached on this phase of the case, it is likewise unnecessary to consider this contention. The foregoing all are facts as to which there is no genuine dispute and the court did not err in so holding.

It is next urged upon us that the right to judgment for defendants, summary or otherwise, was barred because the annexation procedure followed, 1941 Comp. §§ 14-606 to 14-608, was no longer in effect when the city initiated proceedings under it, having been impliedly repealed by the enactment of L.1947, c. 211, 1941 Comp. §§ 14-615 to 14-620, Cumulative Pocket Supplement, 1947. Counsel for the plaintiffs are faced at the outset of this argument with the familiar rule that repeals by implication are not favored. State v. Davisson, 28 N.M. 653, 217 P. 240; Heirich v. Howe, 50 N. M. 90 171 P 2d 312.

A reference to article 6 of Chapter 14, New Mexico Statutes Annotated, discloses that the legislature over the years has provided several different methods of annexation, applicable to particular situations. When in 1947 it enacted Chapter 211, a new and additional method of annexation was provided. To hold that thereby this enactment repealed outright all existing statutes on the subject would be a violent repudiation of the whole doctrine of repeals by implication, as heretofore applied in this state. That the legislature itself entertained no such thought is evidenced by the absence of a general repealing clause when viewed in the light of an *express* repeal of 1941 Comp. § 14-602, dealing with the subject of annexa-

tion. Under such circumstances, it is fair to assume that if the legislature had intended the wholesale repeal urged by counsel, it would have manifested such intent by including within the repeal other specified sections of pertinent statutes, while its mind was on the subject.

Finally, it is said the annexation proceedings are fatally defective in that no "survey" of the area sought to be annexed accompanied the petition for annexation as presented to the City Council. Plaintiffs rely upon the language of 1941 Comp. § 14-606, providing that the petition seeking annexation of contiguous territory upon being presented to the governing board of any city, town or village with the requested signatures shall be "accompanied by a survey and a plat of the contiguous territory sought to be annexed," etc. In this case it is agreed that no survey providing a metes and bounds description accompanied the petition. Nor, indeed, was any metes and bounds survey made. However, a plat accurately designating the area sought to be annexed did accompany the petition and a copy thereof was attached to the motion for summary judgment filed by defendant.

It was shown that the plat had been prepared by the City Engineer from the official maps on file in the office of the County Clerk of Eddy County and in the office of the County Surveyor of Eddy County. Section corners were marked on the ground and the City Engineer had on one occasion made an actual survey of a portion of the land. Reference to the plat discloses that the north boundary of the land is a section line and most of the west and south boundaries of the area annexed either are section lines or quarter-section lines. In addition 514.16 acres of the land had actually been platted into town lots, plats of which were recorded in the office of the County Clerk. The 312 acres on the western edge of the annexed area were made up of full 40-acre sub-divisions, except one portion containing a 40-acre sub-division less one corner cut off by a road. It required only the most casual study of the plat attached to the petition to demonstrate that the boundaries of the annexed area were definitely marked off and capable of easy ascertainment by anyone interested.

The trial judge observed all this and ruled there was substantial compliance with the statutory requirements. Touching this phase of the case he said:

"With reference to whether the City has complied with the requirements of the annexation statute under which it has acted, the only question that can be raised is whether a survey was presented along with the petition. Words must be construed according to the general sense of the act wherein used. A survey in one instance

might mean a survey by use of a transit, and chains on the line; in another, it can be such a description furnished by reference to permanent monuments and natural objects as to definitely define the premises referred to. It can be by determination, by measure or by reference to boundaries which are permanently fixed and are definitely known and which can be ascertained. It is rather in the latter sense that I believe the word is used in this section, since the meaning of it is to delineate or to mark out the particular territory which is to be annexed and to become a part of the city so that the city may know and the inhabitants of the territory may know under what jurisdiction they then fall."

The purpose of attaching a survey or plat. is, of course, to give notice to interested parties of what land is involved and to render definite the corporate limits of the municipality for division into wards; to enable the governing authorities to say who are residents of the city for voting and taxation purposes, and to ascertain whether the petition bears the requisite number of signatures by owners of land within the area to be annexed. It is not suggested here that there was any error in the plat accompanying the petition. It is interesting to note that in the same section which mentions a "survey," if consent of the city to annexation is given, the documents required to be filed in the office of the County Clerk of the county in which the municipality is located include only "a copy of the resolution, together with a copy of the plat of the territory so annexed." There is no requirement for filing a "survey." Since a plat represents an ocular view of the result of a survey—a visual demonstration of the work done—where every purpose of either a survey or plat has been achieved, as here, we think it would sacrifice substance to form to say there had not been substantial compliance with the statutory requirement in this particular. We hold with the trial judge that there has been.

Finding no error, the judgment of the trial court will be affirmed.

It is so ordered.

BRICE, C. J. and LUJAN, McGHEE, and COMPTON, JJ., concur.