834 P.2d 424

**R.E. DUGGER, Jr., and Gregory Salinas, Petitioners–Appellees,**

v.

**The CITY OF SANTA FE, et al., Respondents–Appellants.**

No. 11532.

Court of Appeals of New Mexico.

Feb. 17, 1992.

Writ Issued Quashed as Improvidently Granted
and Petition for Certiorari Denied
May 21, 1992.

Frank R. Coppler, John A. Aragon, Coppler and Aragon, Santa Fe, for petitioners-appellees.

James C. McKay, City Atty., Santa Fe, for respondents-appellants.

Judith A. Olean, Gen. Counsel, Santa Fe, amicus curiae, New Mexico Municipal League.

## OPINION

APODACA, Judge.

The City of Santa Fe, the Santa Fe City Council, and the Santa Fe City Councillors in their official capacity (collectively referred to as the City) appeal from an order of the district court reversing the City's rejection of the annexation petition of certain land developers (petitioners). The district court reversed the City's decision to reject the annexation petition at a writ of certiorari proceeding, on the grounds that the City had violated its own ordinances and that the rejection was not supported by the evidence considered by the City. The City argues that the district court: (1) lacked jurisdiction to issue a writ of certiorari to review the annexation proceedings because they were legislative, not quasi-judicial, in nature; (2) violated the separation of powers doctrine; (3) applied an improper standard of review; (4) ignored the rational reasons underlying the City's decision to reject the annexation petition; (5) compelled municipal annexation through judicial fiat; and (6) erred in denying the City's motion to quash the writ of certiorari.

We hold that the petition method of annexation provided by NMSA 1978, Section 3–7–17 (Repl.Pamp.1987), is a legislative procedure. Although the statute provides no express right of appeal when a petition is denied, we conclude that only a direct appeal lies to the district court, as opposed to a writ of certiorari proceeding. However, on direct appeal, the focus of the district court's attention must be on the constitutionality of the ordinance and the municipality's authority to enact it. Here, neither the City's general plan nor its ordinances afforded petitioners the right to have the City annex their property. It necessarily follows that the district court erred in granting petitioners' writ of certiorari (which is limited to a review of quasi-judicial actions) and in applying a whole record standard of review (which is limited to a review of administration decisions). We reverse and remand with instructions to quash the writ.

## BACKGROUND

Pursuant to Section 3–7–17(A), petitioners petitioned to have 147.5 acres annexed to the southern edge of the City. Two committees of the City, a Development Review Committee and an Urban Policy Committee, together constituted the Planning Commission (Commission). The Commission's function was to review land-use issues, including annexation and zoning, and to make recommendations to the City concerning such issues. After holding meetings on petitioners' petition, the Commission recommended that the property be annexed and zoned, subject to several conditions to which petitioners agreed. The City held a public hearing and, despite the Commission's recommendation, voted not to adopt an ordinance approving the annexa-

tion as required under Section 3–7–17(A)(4). This action essentially had the effect of denying the annexation petition.

Following the City's denial, petitioners sought a writ of certiorari from the district court, requesting an adjudication that the City's decision was contrary to the applicable state statutes and city ordinances, and that it was arbitrary and capricious. The City responded to the writ petition by requesting dismissal. Later, the City also moved for (1) judgment on the pleadings; (2) dismissal of the action for failure to state a claim; and (3) an order quashing the writ. As grounds for these motions, the City argued that it had acted legislatively when it refused to annex petitioners' property and that neither statutory nor constitutional authority allowed the writ or a direct appeal from such an action.

The district court denied the City's motions and held that it had jurisdiction to review the matter. It also granted petitioners' request for adoption of a whole record standard of review, the standard typically reserved for a review of administrative actions. *See In re Apodaca,* 108 N.M. 175, 769 P.2d 88 (1989); *Duke City Lumber Co. v. New Mexico Envtl. Improv. Bd.,* 95 N.M. 401, 622 P.2d 709 (Ct.App. 1980). The district court issued a letter opinion, holding that, because the City had acted in a quasi-judicial capacity, the writ of certiorari was the appropriate method of obtaining judicial review and the City's decision should be reviewed to determine if it was supported by substantial evidence on the whole record. The district court also held that the City's denial of the petition, on the bases that the City would be unable to deliver services to the proposed annexation site and that it was not within the parameters of the City's Master Plan, was not supported by substantial evidence. The district court denied the City's request to submit findings and conclusions. This appeal by the City followed.

## OUR ANALYSIS AS A REVIEWING COURT

Essentially, the main issue in this case, at least as formulated by the parties, is whether the City acted in a quasi-judicial capacity when it denied the annexation petition, thereby conferring appellate jurisdiction on the district court. *See* N.M. Const. art. VI, § 13. "Quasi-judicial" has been defined as:

A term applied to the action, discretion, etc., of public administrative officers or bodies, who are required to investigate facts, or ascertain the existence of facts, hold hearings, and draw conclusions from them, as a basis for their official action, and *to exercise discretion of a judicial nature.*

*Black's Law Dictionary* 1121 (5th ed. 1979) (emphasis added); *see also State ex rel. Battershell v. Albuquerque,* 108 N.M. 658, 777 P.2d 386 (Ct.App.1989); *Duke City Lumber Co. v. New Mexico Envtl. Improv. Bd.,* 95 N.M. at 402, 622 P.2d at 710.

New Mexico Constitution article VI, Section 13, states in part:

The district court shall have original jurisdiction in all matters and causes not excepted in this constitution, * * * and appellate jurisdiction of all cases originating in inferior courts and tribunals in their respective districts, * * *. The district courts, or any judge thereof, shall have power to issue writs of * * * certiorari * * *; provided, that no such writs shall issue directed to judges or courts of equal or superior jurisdiction.

This provision grants district courts the authority to issue writs of certiorari. New Mexico follows the general rule that a writ of certiorari is available to parties seeking review of *quasi-judicial* actions of courts or tribunals inferior to the district courts, and not legislative actions. *See Hillhaven Corp. v. Human Servs. Dep't,* 108 N.M. 372, 772 P.2d 902 (Ct.App.1989); *see also State ex rel. Sisney v. Board of Comm'rs,* 27 N.M. 228, 199 P. 359 (1921).

█ We believe that the dispositive issues in this appeal are (1) the nature of the final decision required by the petition method of annexation, as opposed to the other two methods provided for by statute, and (2) the appropriate standard of review. We note that petitioners concede on appeal that annexation decisions are generally legislative in nature. *See Torres v. Village of*

*Capitan,* 92 N.M. 64, 582 P.2d 1277 (1978); *Leavell v. Town of Texico,* 63 N.M. 233, 316 P.2d 247 (1957). Legislative action usually reflects some public policy relating to matters of a permanent or general character, is not usually restricted to identifiable persons or groups, and is usually prospective. *Cherry Hills Resort v. Cherry Hills Village,* 757 P.2d 622, 625 (Colo.1988) (en banc). Despite petitioners' concession, however, they nonetheless argue that, because the petition method of annexation has many of the trappings usually attributed to a quasi-judicial action, such as open meetings and hearings with the opportunity to present evidence, as well as what petitioners term "ordinances enacted by [the] municipality [that] establish mandatory standards and criteria for annexation," the district court was free to review the proceedings to determine whether the City acted arbitrarily and capriciously and whether the City's findings were supported by substantial evidence.

In New Mexico, decisions that determine how a particular piece of property can be used have been held to be quasi-judicial. *See, e.g., State ex rel. Battershell v. Albuquerque* (hearings before zoning hearing examiner and Environmental Planning Commission regarding application for conditional use permits were quasi-judicial); *Duke City Lumber Co. v. New Mexico Envtl. Improv. Bd.* (public hearing to consider petition by sawmill operator for variance in air quality regulation limiting emissions from wood waste incinerator was quasi-judicial). Additionally, annexations that have been completed pursuant to an administrative agency's order can be reviewed by writ of certiorari. *See Mutz v. Municipal Boundary Comm'n,* 101 N.M. 694, 688 P.2d 12 (1984); NMSA 1978, § 3–7–15 (Repl.Pamp.1987).

█ However, annexations completed by a municipality under the petition method are reviewed under the district court's original jurisdiction. *See Hughes v. City of Carlsbad,* 53 N.M. 150, 203 P.2d 995 (1949); § 3–7–17(C). Thus, if the annexation had been approved rather than denied by the City, the district court would have been required to exercise its original jurisdiction. However, because Section 3–7–17(C) grants the right of appeal only to property owners within an area that has been annexed, review by writ of certiorari of a decision *not* to annex might be deemed appropriate, *see Roberson v. Board of Educ.,* 78 N.M. 297, 299–300, 430 P.2d 868, 870–71 (1967) (where no provision is made for appeal, the only review available is by certiorari), but only if the City's action in denying petitioners' request for annexation could be categorized as quasi-judicial in nature. *See Cherry Hills Resort v. Cherry Hills Village.*

## SECTION 3–7–17 REQUIRES A LEGISLATIVE DECISION

Initially, we observe that the legislature has the inherent authority to expand municipal boundaries. *See Torres v. Village of Capitan.* This proposition is stated most aptly in 2 Eugene McQuillin, *The Law of Municipal Corporations* § 7.10 (3d ed. 1988) (McQuillin):

> The extension of the boundaries of a city or town is viewed as purely a political matter, entirely within the power of the state legislature to regulate. It is, in other words, a legislative function. This power is sometimes said to be inherent in the legislature, while in other instances it has been said to be a power incidental to the power to create and abolish municipal corporations * * *.

> [The enactment of annexation statutes] is regarded as a discretionary legislative prerogative, and unless the obligations of contracts or vested rights or third persons are impaired by such action, in accordance with the well established rule, the judiciary cannot interfere. [Footnotes omitted.]

█ The legislature has delegated its authority of annexation under three separate methods, each of which is attuned to distinct goals and exemplifies different degrees of legislative delegation. Of the three types of annexation procedures, two (the boundary commission and arbitration methods) are administrative, and one (the petition method) is legislative. *See* NMSA 1978, § 3–7–1(A) (Repl.Pamp.1987).

■ Section 3-7-17(A), the statute governing the petition method, states:

A. Whenever a petition:

(1) seeks the annexation of territory contiguous to a municipality;

(2) is signed by the owners of a majority of the number of acres in the contiguous territory;

(3) is accompanied by a map which shall show the external boundary of the territory proposed to be annexed and the relationship of the territory proposed to be annexed to the existing boundary of the municipality; and

(4) is presented to the governing body, the governing body *shall by ordinance express its consent or rejection* to the annexation of such contiguous territory. [Emphasis added.]

We interpret the highlighted language to mean that the legislature intended to delegate its authority to a *legislative* body and required a legislative decision-making process—the enactment of an ordinance—to make the decision effective. We realize that, in this appeal, the City did not enact an ordinance rejecting the annexation. Instead, it declined to adopt an ordinance consenting to the annexation. However, we hold that the City's rejection of the proposed ordinance had the same effect as the enactment of an ordinance rejecting the annexation. There is no practical difference between the two actions because either results in a denial of the proposed annexation. A basic tenet of judicial review is not to exalt form over substance. *See, e.g., Worland v. Worland*, 89 N.M. 291, 551 P.2d 981 (1976); *State ex rel. Human Servs. Dep't v. Martin*, 104 N.M. 279, 720 P.2d 314 (Ct.App.1986).

■ Additionally, unlike the two administrative methods, the petition method does not expressly include criteria that, if met, require a municipality to approve an annexation petition. *Cf.* NMSA 1978, § 3-7-10(A) (Repl.Pamp.1987); § 3-7-15(A), (B); *Mutz v. Municipal Boundary Comm'n; Cox v. City of Albuquerque*, 53 N.M. 334, 207 P.2d 1017 (1949). Because Section 3-7-17 requires the municipality to use legislative processes in approving or disapproving

a petition to annex and does not impose criteria for annexation, we conclude that the petition method of annexation is legislative, not quasi-judicial, in nature. As we interpret the statute, the decision to annex is made after considering the same criteria as are relevant in denying a decision to annex. Under these circumstances, we believe the legislature should be understood to have intended that, whether the decision is to grant or deny, it would be reviewed on the same basis. Thus, we conclude either decision is reviewable only on direct appeal to the district court. It necessarily follows that, because the petition method used here was legislative in nature and not quasi-judicial, the district court lacked jurisdiction to entertain a writ of certiorari.

■ Petitioners nevertheless argue that the City's ordinances themselves created a quasi-judicial procedure, and thus, that review by writ of certiorari was proper. Essentially, petitioners contend that the City had identified requirements they had met, and, for that reason, they were entitled to a decision in favor of annexation. As we later discuss, we do not believe the City identified criteria that entitled petitioners to a decision in favor of annexation. Consequently, we need not decide whether the legislature has authorized municipalities to identify requirements that, if met, require annexation. *Cf. Mutz v. Municipal Boundary Comm'n* (holding that the municipal boundary commission could only exercise the power and authority granted to it by statute). The process by which the City reached its decision did not transform it into a quasi-judicial proceeding, even if the process had the appearance of quasi-judicial proceedings. Although the municipality may properly establish criteria and apply them in a "quasi-judicial" fashion, the final decision to annex or not to annex retains its legislative character. *Cf. Stewart v. City of Corvallis*, 48 Or.App. 709, 617 P.2d 921 (1980) (final decision regarding annexation remains legislative in character irrespective of state-mandated quasi-judicial planning process). For these reasons, we reject petitioners' suggestion that the City could somehow transform a legis-

lative process into a quasi-judicial process by requiring more than the legislature authorized. *Cf. Westgate Families v. County Clerk of Los Alamos*, 100 N.M. 146, 667 P.2d 453 (1983) (legislative power to rezone property is derived from the state and state statutes mandating zoning by adoption of a municipal ordinance precluded a home rule municipality from varying the statutory procedure by allowing a referendum on a rezoning ordinance).

## STANDARD USED IN REVIEWING LEGISLATIVE ACTS

■ We next consider the appropriate standard of review when a *legislative* act is challenged. The majority of jurisdictions limit judicial review of an ordinance passed pursuant to express legislative authority to the constitutional validity of the statute or its application. *See* 5 McQuillin § 18.22. New Mexico follows the majority rule. *See City of Roswell v. Bateman*, 20 N.M. 77, 146 P. 950 (1915). When an ordinance is challenged as unconstitutional, the test generally applied is whether the ordinance bears a reasonable or rational relationship to a legitimate legislative goal or purpose. *See Barber's Super Mkts., Inc. v. City of Grants*, 80 N.M. 533, 458 P.2d 785 (1969); *Mitchell v. City of Roswell*, 45 N.M. 92, 111 P.2d 41 (1941); *Garcia v. Village of Tijeras*, 108 N.M. 116, 767 P.2d 355 (Ct. App.1988). The presumption that legislative acts are legal, valid, and constitutional extends to municipal ordinances. *City of Albuquerque v. Jones*, 87 N.M. 486, 535 P.2d 1337 (1975).

■ Under the reasonableness standard, a court is required to show great deference to the municipality's decision. It is well settled in New Mexico that:

[w]here power to do an act is conferred upon a municipality in general terms without describing the mode of exercising it, the trustees have the discretion as to the manner in which the power shall be employed, and the courts will not interfere with this discretion.

*Page v. Town of Gallup*, 26 N.M. 239, 245, 191 P. 460, 461–62 (1920); *see also Town of Gallup v. Constant*, 36 N.M. 211, 213, 11 P.2d 962, 963 (1932) (review limited to "an obviously arbitrary or unreasonable exercise of the power conferred"); *Doyal v. Waldrop*, 37 N.M. 48, 53, 17 P.2d 939, 941–42 (1932) (review limited to situations where there is "fraud or collusion on the part of the officers charged with performance of the duty"). There is no independent inquiry into the wisdom, policy, or justness of the legislative action. *See Richardson v. Carnegie Library Restaurant, Inc.*, 107 N.M. 688, 763 P.2d 1153 (1988) (generally discussing the appropriate standard of review in the context of an equal protection challenge).

■ When the district court applied the administrative standard of review to determine that there was not substantial evidence on the whole record to support the City's decision to deny annexation, in effect the court made an independent inquiry into the wisdom of the City's action based on the evidence before it and did not limit itself to a determination of whether the City's action was constitutional and within its legislatively granted authority. Thus, the district court impermissibly substituted its judgment for that of the City. We hold that application of the administrative standard of review to the City's decision whether to approve or deny an annexation petition pursuant to Section 3–7–17 was improper.

■ Petitioners analogize to zoning decisions in arguing that, even if annexation decisions are legislative in nature, the district court was correct in applying the standard of review normally applied in reviewing administrative decisions. *See Coe v. City of Albuquerque*, 76 N.M. 771, 418 P.2d 545 (1966); *Downtown Neighborhoods Ass'n v. City of Albuquerque*, 109 N.M. 186, 783 P.2d 962 (Ct.App.1989). We are not persuaded.

■ Although zoning decisions are an exercise of legislative power, *see Downtown Neighborhoods Association v. City of Albuquerque*, they are subject nonetheless to the administrative standard of review. *See Coe v. City of Albuquerque.* However, the statutes governing zoning

specifically provide for zoning decisions to be quasi-judicial in nature. The municipality is authorized to set up an administrative agency to make zoning decisions. NMSA 1978, § 3–21–7 (Repl.Pamp.1985). The initial appeal from the decision of the administrative agency is to the zoning authority. NMSA 1978, § 3–21–8 (Repl.Pamp.1985); *Corondoni v. City of Albuquerque*, 72 N.M. 422, 384 P.2d 691 (1963). Further appeal is by writ of certiorari to the district court. NMSA 1978, § 3–21–9 (Repl.Pamp. 1985). Because the legislature demonstrated its intent that zoning decisions be handled administratively, application of the administrative standard of review is therefore appropriate.

■ Similarly, the legislature provided for the establishment of administrative bodies to make annexation decisions pursuant to the arbitration methods and boundary commission methods. § 3–7–6 (establishment of board of arbitration when municipality desires to annex contiguous territory); NMSA 1978, § 3–7–11 (Repl.Pamp.1987) (establishment of independent municipal boundary commission). Decisions of the municipal boundary commission are to be reviewed by certiorari. § 3–7–15(E). Thus, application of administrative standards of review to annexations made pursuant to these two methods is likewise proper.

However, the legislature has not established such an administrative or quasi-judicial scheme for the making and reviewing of annexation decisions under the petition method established by Section 3–7–17. Instead, as we concluded earlier, the legislature demonstrated its intent that the municipality make a *legislative* decision by requiring the municipality to pass an ordinance, the quintessential legislative act. § 3–7–17(A). Additionally, the legislature required that review of the municipality's decision be by direct appeal "questioning the validity of the annexation proceedings." § 3–7–17(C). This provision indicates the legislature's intent that decisions made under the petition method be reviewed in the same manner as other ordinances and the court's inquiry limited to the procedures

followed, rather than the merits of the decision. Therefore, we do not consider zoning law analogous to the law governing annexation petitions.

PETITIONERS HAVE FAILED TO SHOW THAT THE CITY'S ACTION WAS UNCONSTITUTIONAL OR THAT THEY WERE DENIED DUE PROCESS

Although the district court's review of the City's action by writ of certiorari was improper, petitioners could have had the City's action reviewed in the same manner by which ordinances are generally reviewed—by filing an original action in district court based on the court's original jurisdiction. *See, e.g., Garcia v. Village of Tijeras; cf. Richardson v. Carnegie Library Restaurant, Inc.* In such an action, petitioners would have been limited to challenging either the constitutionality of Section 3–7–17 or its application. *See City of Roswell v. Bateman.* The constitutionality of the petition method of annexation has already been upheld. *Torres v. Village of Capitan* (petition method does not violate equal protection nor does it infringe on right to vote).

Petitioners' argument that the City failed to follow its own ordinances in denying their petition could be construed as a claim that the City violated their right to procedural due process under the 14th amendment of the United States Constitution and Article II, Section 18 of the New Mexico constitution. Petitioners essentially argue that the City did not follow its own ordinances in rejecting their annexation petition because, under the City's ordinances and general plan, once petitioners had complied with the criteria required by the City, they were entitled as a matter of right to have their property annexed by the City. However, petitioners' argument fails because the City's ordinances did not create an entitlement in petitioners to have their property annexed and because petitioners received all the process due them.

In view of our holding, we need not decide whether the City was authorized to create such an entitlement. We do note, however, that the creation of an entitlement may have been beyond the City's

authority granted to it by the legislature because it could be deemed inconsistent with the legislative procedure mandated by Section 3–7–17(A). § 3–17–1; 2 McQuillin § 7.13.

■ To address petitioners' entitlement argument, we turn to the pertinent statutory provisions. NMSA 1978, Sections 3–19–1 to –12 (Repl.Pamp.1985) authorizes municipalities to engage in planning activities and to adopt a master plan. Such master-planning actions have been described as follows:

The master plan contains chosen community goals and policies to be used as an advisory guide for future municipal development. * * * [T]he master plan coordinates the myriad of often conflicting factors and policies considered in the community development process. * * *

The master plan is usually merely an advisory declaration of policy and intention with no regulatory effect.

5 Patrick J. Rohan, *Zoning and Land Use Controls* § 37.01(1)(c) (1991) (footnotes omitted). The New Mexico legislature intended any master plan adopted by a municipality to be advisory in nature. Section 3–19–9(A) states expressly that the master plan "shall be made with *the general purpose of guiding* and accomplishing a coordinated, adjusted and harmonious development of the municipality...." (Emphasis added.)

■ The Santa Fe Area General Plan was adopted by Resolution No. 1983–96, which was amended by another resolution, No. 1985–107. In New Mexico, a resolution does not carry the weight of law, as do ordinances for municipalities. *Williams v. City of Tucumcari*, 31 N.M. 533, 249 P. 106 (1926). Thus, it is commonly recognized that "a resolution, generally speaking, is simply an expression of opinion or mind or policy concerning some particular item of business coming within the legislative body's official cognizance, ordinarily ministerial in character and relating to the administrative business of the municipality." 5 McQuillin § 15.02. Thus, the master plan, being only a resolution, does not

bind the City to any specific procedures as would an ordinance.

The language of the General Plan does not purport to entitle petitioners to have their property annexed by the City. The General Plan states:

1. [T]he City *should* annex land if the basic urban services are or will be reasonably capable of accommodating the additional demand. Annexation of land *should* be undertaken at a rate that would not cause the inefficient utilization and deployment of urban services.

2. The City *should* monitor the supply of potential dwelling units on vacant subdivided lots in approved developments. This survey * * * *should* be taken into account by the Planning Commission when making a *recommendation* to the *City Council* on every large-scale annexation request.

3. Each annexation proposal *should* conform with the criteria set out in the City's "Annexation Policy," * * *. This policy sets out *guidelines* for both large and small annexation requests. Generally, the property owners or developers must demonstrate that the annexation area is suitable for the proposed uses; will not overload the capacity of existing streets, sewers, and City services; and is appropriately located for annexation, in terms of existing City boundaries and plans for City utilities.

Plan 83, § IX.D.1.–3 at 54 (emphasis added). The emphasized language does not unequivocally require that the City annex certain land at certain times; it merely sets out certain policies, guidelines and factors that the City *should* consider in determining whether or not to annex territory. The City's master plan sets broad priorities concerning general areas that would be considered appropriate for annexation over a twenty-year period. *See* Plan 83, § IX.B.1. at 53. The plan also points out that development could occur in a different sequence than that contemplated by the staging plan. Plan 83, Section IX.B.3. at 54, indicates that the plan is not intended to commit the City to annexing particular territory at any particular time. We thus con-

**56**

clude that the Master Plan did not create an entitlement to annexation, as petitioners contend.

 Even the ordinance relied on by petitioners does not mandate that certain territory be annexed. Rather, Santa Fe City Code 1981, Section 3–8–1.5(C)(2) states that:

> If the accommodation of the impacts cannot be demonstrated *to the city's satisfaction* as to the assumptions, methodology, or data then:
>
> *   *   *   *   *   *
>
> (2) The city shall deny the annexation. [Emphasis added.]

This indicates to us that the City retained the final decision-making authority. Requirements that a land developer must meet before his or her land is to be considered for annexation do not limit the City's power to approve or disapprove a proposed annexation. Thus, petitioners' contention that the City's master plan and ordinances required the City to annex petitioners' land if certain criteria were met must fail.

Additionally, petitioners received all the procedural due process they were entitled to receive. They received all notices of hearings provided for in the City's ordinances. The only failure was that the City refused to pass an ordinance annexing petitioners' property. We have already determined that this inaction was, in effect, the same as the passage of an ordinance refusing to annex petitioners' property. In reality, petitioners attack only the merits of the City's decision. Because the City's decision was legislative, the wisdom of the action is not for the courts to decide. It follows that any claim by petitioners that they were denied due process must fail.

Petitioners have not asserted that the City acted fraudulently or unconstitutionally in rejecting their petition. Nor have they claimed that the City acted beyond the scope of its delegated authority. We therefore conclude that the district court erred when it looked beyond the purely procedural dictates of the annexation statute into the merits of the City's decision. *See generally* 5 McQuillin § 16.91.

CONCLUSION

We hold that the City acted in a purely legislative capacity in refusing to enact an ordinance granting petitioners' annexation petition. The district court thus erred in granting the writ of certiorari and in reviewing the City's decision on its merits. We therefore reverse the district court and uphold the City's decision disapproving petitioners' annexation petition. We take this opportunity to acknowledge the helpfulness of the amicus curiae brief filed by the New Mexico Municipal League. The parties shall bear their own costs on appeal.

IT IS SO ORDERED.

MINZNER and CHAVEZ, JJ., concur.