**716**

905 P.2d 1120

Jean DAUGHERTY, Ida Mae Rayroux,
Jesse F. Rayroux and Roy L. Rayroux,
Plaintiffs–Appellants,

v.

CITY OF CARLSBAD, a municipality, act-
ing by and through its councilmen and
Mayor, Houston Clark, Tom Quintela,
Gary Perkowski, Fred Bloss, Ted Hau-
ser, Dale Janway, George Crump, Joe
Florez, and Mayor Bob Forrest, Defen-
dants–Appellees,

and

Richard Forrest, Sr., Richard Forrest, Jr.,
Gene R. Taylor, Tommy Wilson, Collett
Ryan and Sherry Campbell, Intervenors–
Appellees.

No. 15923.

Court of Appeals of New Mexico.

Aug. 25, 1995.

Certiorari Denied Nov. 1, 1995.

Thomas L. Marek, Matthew T. Byers, Marek & Francis, P.A., Carlsbad, J.W. Neal, J.W. Neal, P.C., Hobbs, for Plaintiffs–Appellants.

B.G. Davis, Rosenberg & Davis, Carlsbad, for Defendants–Appellees.

W.T. Martin, Jr., Law Offices of W.T. Martin, Jr., P.A., Carlsbad, for Intervenors–Appellees.

## *OPINION*

BLACK, Judge.

Based on a petition by Intervenors, the Carlsbad City Council adopted Ordinance 93–16, which annexed approximately 141 acres of land into the City of Carlsbad (City). Plaintiffs, who also own land within the annexed parcels, filed an appeal in the district court, challenging the annexation. Both Plaintiffs and the City filed motions for summary judgment. The district court granted the City's motion. We affirm.

### I. *FACTS*

The facts are undisputed. Intervenors, Richard Forrest, Sr. and Richard Forrest, Jr., Gene R. Taylor, Tommy Wilson, Collett Ryan and Sherry Campbell filed a petition seeking annexation of a tract of land that they owned (Forrest Property). The Forrest Property itself did not touch the City limits and the Intervenors proposed linking their property to the City limits by a twenty-three acre irregular-shaped strip of land owned by Plaintiffs. The combined tracts adjoin the Carlsbad City limits on the west.

The City filed a motion for summary judgment attaching an affidavit of Gary Robertson, a land surveyor, and an assistant to the City Engineer. After setting forth the various City boundaries, he stated that "the Tract annexed by the City Council of the City of Carlsbad on 9/28/93 by Ordinance No. 93–16 shares a common boundary with and is therefore 'Contiguous to' the then existing City of Carlsbad upon a common boundary extending for at least 930.30 feet." Plaintiffs responded to the City's motion and filed a cross motion for summary judgment. Plaintiffs Jesse Rayroux and Louise Tracy filed affidavits in support of their motion. Tracy averred that her land is "unimproved, raw land," and Rayroux stated that his land "is devoted to agricultural purposes." Both stated that, although annexation would subject their lands to City ordinances, neither of them would receive any "economic, commercial, proprietary, or aesthetic advantage by the annexation." They further testified that the land annexed "is not likely to be used by the City to advance any of its governmental functions, or to benefit the City in any economic, commercial, proprietary, or aesthetic, manner." Based on the agreement of both sides, the district court found that there was no issue of material fact. The district court stated that "[t]here exists only an issue of law, as follows: What constitutes 'contiguous' pursuant to 3–7–17 N.M.S.A.(A) 1978." The district court concluded that the annexed tract was contiguous as a matter of law.

### II. *STANDARD OF REVIEW*

The New Mexico Legislature "has delegated its authority of annexation under three separate methods, each of which is attuned to distinct goals and exemplifies different degrees of legislative delegation." *Dugger v. City of Santa Fe*, 114 N.M. 47, 51, 834 P.2d 424, 428 (Ct.App.), *writ quashed*, 113 N.M. 744, 832 P.2d 1223 (1992). Two of the methods rely on administrative bodies to make the annexation decisions. *Id.* at 54, 834 P.2d at 431. The application of administrative standards of review to annexations made pursuant to either of these procedures is therefore proper. *Id.*

It is the third procedure authorized by the legislature, the petition method, NMSA 1978, Section 3–7–17 (Repl. Pamp.1987), that is involved in this case. This procedure is primarily political, and we "limit judicial review of an ordinance passed pursuant to express legislative authority to the constitutional validity of the statute or its application." *Dugger*, 114 N.M. at 53, 834 P.2d at 430. Furthermore, "[t]he presumption that legislative acts are legal, valid, and constitutional extends to municipal [annexation] ordinances." *Id.* The test generally applied in this context is "whether the ordinance bears a reasonable or rational relation-

ship to a legitimate legislative goal or purpose." *Id.* A court is required to show great deference to the decision of the municipal authority. *Id.; Torres v. Village of Capitan,* 92 N.M. 64, 69, 582 P.2d 1277, 1282 (1978).

III. *ANNEXATION BY PETITION IS A POLITICAL PROCESS AND THE JUDICIARY DOES NOT REVIEW THE WISDOM OF SUCH ANNEXATIONS*

Plaintiffs challenge the annexation on the ground that the Forrest Property was not contiguous to the City limits, as required by Section 3–7–17. Plaintiffs argue that the City cannot make the Forrest Property contiguous by annexing the "shoestring" comprised of Plaintiff's property.

Although they superficially challenge the alleged lack of "contiguity" on legal grounds, the arguments presented by Plaintiffs against this "shoestring" annexation are essentially political and economic. *See City of Safford v. Town of Thatcher,* 17 Ariz.App. 25, 28, 495 P.2d 150, 153 (land that touches is contiguous; size and shape of parcel is a legislative issue), *review denied* (May 23, 1972); *In re West Laramie,* 457 P.2d 498, 501 (Wyo.1969) (size and shape of parcel to be annexed is a political question). In their affidavits, they argued that neither they nor any other person or entity would receive any "economic, commercial, proprietary, or aesthetic advantage by the annexation." They further opined that the land "is not likely to be used by the City to advance any of its governmental functions, or to benefit the City in any economic, commercial, proprietary, or aesthetic, manner." Additionally, they pointed out that their annexed land contains no city streets and "it is highly improbable that any city streets could be constructed" on such land.

The nature of their challenges to the annexation illustrates that Plaintiffs fail to appreciate the proper scope of judicial review of an annexation petition completed under the petition process. In establishing the petition procedure, the Legislature created a process legally distinct from the other methods of annexation. Both the other methods

of annexation may be initiated by the municipal government desiring the annexation. NMSA 1978, §§ 3–7–5, –12 (Repl. Pamp.1987). In such a context, a neutral third party may well have been thought necessary to protect citizens from the potentially arbitrary abuse of governmental power. The petition method, however, may only be initiated by the owners of property contiguous to the municipality, and not by the city itself. In this situation, there is less danger that the municipality will use its governmental power arbitrarily to obtain what it wants. The Legislature therefore established the city as the arbitrator of what is essentially a political dispute between competing groups of citizens. Under the petition procedure, "the legislature intended to delegate its authority to a *legislative* body and required a legislative decision-making process—the enactment of an ordinance—to make the decision effective." *Dugger v. City of Santa Fe,* 114 N.M. 47, 52, 834 P.2d 424, 429 (Ct.App.), *writ quashed,* 113 N.M. 744, 832 P.2d 1223 (1992). Therefore, "unlike the two administrative methods, the petition method does not expressly include criteria that, if met, require a municipality to approve an annexation petition." *Id.*

The method of judicial review of an annexation by the petition process is also fundamentally different from the judicial analysis employed under either of the other annexation methods established by the Legislature. *Id.* at 54, 834 P.2d at 431. For this reason, the district court reviews City annexation ordinances resulting from consideration of a petition on direct appeal, while annexation decisions resulting from the administrative methods are appropriately reviewed by way of certiorari. *Id.*

Not only are the appellate procedures different, but the standards of judicial review are also different. Annexation decisions arising from the two administrative procedures are reviewed as are other administrative proceedings. *Id.* at 54, 834 P.2d at 431. In reviewing a decision of the boundary commission, for example, the court should "determine 'whether the administrative body acted fraudulently, arbitrarily or capriciously, whether the order was supported by substan-

tial evidence and, generally, whether the action of the administrative body was within the scope of its authority." *Mutz v. Municipal Boundary Comm'n*, 101 N.M. 694, 702, 688 P.2d 12, 20 (1984) (quoting *Llano, Inc. v. Southern Union Gas Co.*, 75 N.M. 7, 11–12, 399 P.2d 646, 650 (1964)). The petition process, on the other hand, is not administrative but legislative. *Dugger*, 114 N.M. at 51, 834 P.2d at 428. We "limit judicial review of an ordinance passed pursuant to express legislative authority to the constitutional validity of the statute or its application." *Id.* at 53, 834 P.2d at 430. Therefore, when such an annexation comes up for judicial review, "[t]here is no independent inquiry into the wisdom, policy, or justness of the legislative action." *Id.* The judiciary merely determines whether the municipality has complied with the plain meaning of the legislation and whether the legislation is itself constitutional.[1] Because the petitioners in *Dugger* made no claim that the City had acted illegally or unconstitutionally, we held that the district court erred when it "made an independent inquiry into the wisdom of the [City of Santa Fe's] action based on the evidence before it and did not limit itself to a determination of whether the [City of Santa Fe's] action was constitutional and within its legislatively granted authority." *Dugger*, 114 N.M. at 53, 834 P.2d at 430.

The New Mexico Supreme Court also refused to rely on the political protests of disgruntled landowners to override a City Council annexation resolution in *Hughes v. City of Carlsbad*, 53 N.M. 150, 203 P.2d 995 (1949). In *Hughes*, the owners of a majority of the acreage in a parcel contiguous to the City petitioned for annexation. *Id.* at 154, 203 P.2d at 997. The City Council passed an annexation resolution. *Id.* Two hundred plaintiffs who owned land in the area to be annexed filed suit, seeking to enjoin the City, its mayor and city council, from annexing the land. *Id.* at 152, 203 P.2d at 996. As in the present case, the plaintiffs in *Hughes* complained that much of the land was undeveloped and that annexation "would subject them to restrictive ordinances of the city, higher ad valorem taxes as well as other municipal taxes, excise and otherwise, without corresponding benefits." *Id.* at 153, 203 P.2d at 996. Both sides moved for summary judgment. *Id.* at 153, 203 P.2d at 997. The district court granted the City's motion and dismissed the complaint. *Id.* On appeal, the plaintiffs argued that the approximately three hundred acres of "rocky, barren, unsettled and unplatted land on the western side of the annexed area" were not appropriate for urban annexation. *Id.* at 154–55, 203 P.2d at 997–98. The Supreme Court refused to accept the plaintiffs' contention, saying:

> But the city council, as already shown in the resolution for annexation, had found that the area annexed is chiefly valuable by reason of its adaptability for urban purposes and that when combined with the City of Carlsbad, the annexed area constitutes but a single community unit. The reasonableness of the extension of corporate boundaries is to be determined by considering the annexed area as a whole. "The question is not whether it is reasonable in each and every part." And the power to annex being a legislative function, in exercising that power great latitude must necessarily be accorded the legislative discretion, "and every reasonable presumption in favor of the validity of its action must be indulged."

*Id.* (citations omitted).

Plaintiffs' challenges in the instant case are highly reminiscent of those in *Hughes*.[2] In the present case, the Plaintiffs

---

1. The dissent would apparently use statutory interpretation to consider the consequences of such an annexation. We do not feel that the language of Section 3–7–17 authorizes this type of analysis.

2. The dissent correctly notes that *Hughes* was partially overruled by *Mutz*. As we read *Mutz*, however, it was the attempt to create a requirement that annexation be proved to be " 'reasonable under the totality of the facts' " that was

rejected. *Mutz*, 101 N.M. at 701, 688 P.2d at 19. In refusing to rely on *Hughes'* five-prong socioeconomic analysis of whether an annexation is reasonable, the *Mutz* court re-emphasized the limited role of the judiciary in the process of annexation:

> Municipal annexation, however, is a legislative function. The wisdom and the fairness of an annexation are left to the discretion of the municipality and the state legislature. The Commission, a creature of statute, may exer-

claim the property that Intervenors really sought to be annexed, the Forrest Property, is just connected by this "shoestring" parcel of Plaintiffs' Tracy–Rayroux property to satisfy the technical statutory requirement of contiguity. In neither *Hughes* nor the present case did the protestors claim that the Legislature had illegally delegated annexation authority to Carlsbad or that their property was being confiscated in violation of constitutional guarantees. In both cases, therefore, the appropriate judicial response is deference to the legislative decision of the City Council. *See Mutz,* 101 N.M. at 703, 688 P.2d at 21 (Stowers, J., specially concurring) ("[T]he fact that the annexation may not be reasonable to the parties whose land is being annexed is not an issue and is not the test under the laws of the State of New Mexico."); *see also* John R. Cooney, Note, *Annexation of Unincorporated Territory in New Mexico,* 6 Nat.Resources J. 83, 85–86 (1966) ("Generally, in the absence of constitutional restriction, the legislature has absolute power to create or change municipal boundaries, without the consent and even over the protest of those affected.") (footnotes omitted).

The failure of the New Mexico Legislature to require that petitioners show more than proof of physical contiguity creates a temptation for judicial intervention when annexation might appear to produce poor urban planning or an apparent lack of suitable community cohesiveness. Such intervention, however, deprives the process of predictability and does not produce provably better results than the political process established by our Legislature. Professor Clayton Gillette recently discussed policies in favor of judicial restraint on such a political question:

> A clear contiguity rule that reduces the role of judicial review requires those affected by a proposed annexation to take advantage of political opportunities to influence the shape and structure of the proposal. The incentives created by a nebulous rule are just the opposite—to invite courts into the business of drawing

boundaries and hence restructuring a transaction, thereby advancing the annexees' objective of using protracted litigation to delay consummation of the proposed annexation. This strategy, of course, may be applied any time an annexation is proposed, not just in those cases in which annexations in fact abuse the technical contiguity requirement. If, as seems to be the case, we cannot be certain that "better" decisions will result from judicial intervention, at the very least we can minimize the costs of decision making, an objective that technical application of the contiguity requirement appears to satisfy.

Clayton P. Gillette, *Expropriation and Institutional Design in State and Local Government Law,* 80 Va.L.Rev. 625, 684 (1994).

This does not leave the judiciary without a meaningful role in reviewing annexation by petition. While the process is political, it does not, of course, allow abrogation of annexees' constitutional rights. The proper role of the judiciary in reviewing such an annexation is to resolve constitutional challenges to the political process involved. *See Torres v. Village of Capitan,* 92 N.M. 64, 69–70, 582 P.2d 1277, 1282–83 (1978); *see generally* 56 Am.Jur.2d *Municipal Corporations* § 57 (1971). That is why, in *Dugger,* this Court made it clear that no constitutional objection had been raised to those annexations. *Dugger,* 114 N.M. at 53–54, 834 P.2d at 430–31. Nor has any constitutional objection been raised in the present case.

## IV. CONCLUSION

The district court found that the annexed tract in dispute is contiguous to the City. The district court properly refused Plaintiffs' invitation to analyze the economic or political benefits or burdens bestowed upon their land by the annexation.

The judgment of the district court is affirmed.

**IT IS SO ORDERED.**

ALARID, J., concurs.

---

cise only such power and authority as is granted to it by statute. Because the legislature established only the two requirements for annexation as set forth in Section 3–7–15, the Commission was only authorized to determine whether those two requirements were met. [Citations omitted.] *Id.*

HARTZ, Judge (dissenting.)

I respectfully dissent. The law governing municipal annexations requires that annexed territory be contiguous to the municipality. In my view, the contiguity requirement cannot be evaded by means of a sham or subterfuge, and the record in this case establishes that contiguity was accomplished by such means.

I am not certain of the precise extent to which my views differ from those of the majority. Because the majority opinion fails to address the contention that contiguity cannot be accomplished by means of a sham or subterfuge, it is not clear whether the majority rejects the contention altogether or whether it simply finds no basis for finding a sham or subterfuge in this case. There is also a third possibility. Language in the majority opinion to the effect that annexation by petition is a political process and that judicial intervention is likely to produce inferior results may suggest that the majority believes that judicial review of annexations by petition is limited to constitutional issues. I will first address this last matter—the scope of judicial review—and then turn to a discussion of "sham."

## A. *Standard of Review*

The statutory provision at issue is NMSA 1978, Section 3–7–17(A) (Repl.Pamp.1987), which states:

> Whenever a petition:
>
> (1) seeks the annexation of territory contiguous to a municipality;
>
> (2) is signed by the owners of a majority of the number of acres in the contiguous territory;
>
> (3) is accompanied by a map which shall show the external boundary of the territory proposed to be annexed and the relationship of the territory proposed to be annexed to the existing boundary of the municipality; and
>
> (4) is presented to the governing body, the governing body shall by ordinance express its consent or rejection to the annexation of such contiguous territory.

When an annexation is challenged as being in violation of this provision, I would think that the court's role would be to interpret the statutory language, determine whether the annexation complied with the statutory requirements, and overturn the annexation if it did not comply.

I cannot agree with the apparent view of the majority that these tasks can be avoided by simply characterizing the municipality's decision to annex as "legislative" action. This characterization is a mischaracterization resulting from reading too much into our decision in *Dugger v. City of Santa Fe,* 114 N.M. 47, 834 P.2d 424 (Ct.App.), *writ quashed,* 113 N.M. 744, 832 P.2d 1223 (1992).

In *Dugger* the city had rejected a petition to annex certain territory. We pointed out that under the petition method of annexation the legislature had not set forth criteria whose satisfaction required the municipality to consent to the annexation. Unlike annexation by the two other statutory methods, which provided that annexation must take place if certain facts were established, the statute governing annexation by petition permitted a municipality to reject the petition for any reason. Because the legislature had imposed no standards governing *rejection* of a petition, it was appropriate to refer to such a rejection as a "political" or "legislative" matter, subject only to review for constitutionality.

But it does not follow that municipal *consent* to a petition for annexation is reviewable only for constitutionality. Although the legislature imposed no restrictions on a municipality's *rejection* of a petition for annexation, it did set standards that must be satisfied before the municipality could *consent* to the petition. The petition must be valid (that is, comply with statutory requirements) before the municipality can consent to it, whereas the validity of the petition is irrelevant if the municipality rejects annexation. Thus, the analysis that led the *Dugger* court to state that the decision to reject a petition is solely a "legislative" or "political" determination does not apply to consent to a petition. *Dugger* had no occasion to consider the scope of review of a municipality's consent to annexation. Nothing in *Dugger* suggests that the courts should ignore specific statutory requirements that must be satisfied before a

municipality can consent to a petition for annexation.

On the contrary, *Dugger* states that New Mexico "limit[s] judicial review *of an ordinance passed pursuant to express legislative authority* to the constitutional validity of the statute or its application." *Dugger,* 114 N.M. at 53, 834 P.2d at 430 (emphasis added). The emphasized language indicates that judicial review is limited to constitutional concerns only if the ordinance is authorized by statute—in other words, courts must address both the constitutionality of the ordinance and whether the legislature authorized the ordinance. In *Dugger* the city had express legislative authority to reject a petition for annexation, without any limitations being imposed by the statute on such a rejection. Consequently, only constitutional issues remained for consideration. In contrast, the issue here is whether in fact the ordinance was passed pursuant to "express legislative authority" or whether the annexation ordinance failed to comply with the authorizing legislation. It would be a misreading of *Dugger* to conclude that judicial review of ordinances is limited to questions of constitutional validity so long as such ordinances are permitted by statute, even if the statute imposes explicit conditions on the power of municipalities to enact such ordinances. I am confident that when the legislature conveys conditional authority upon municipalities, it expects the courts to enforce the conditions.

Nor am I persuaded by the majority's reliance on *Hughes v. City of Carlsbad,* 53 N.M. 150, 203 P.2d 995 (1949). This reliance is perplexing for two reasons. First, contrary to the view adopted by the majority here, *Hughes* imposed a "reasonableness" requirement on annexation and laid down a five-part test for determining reasonableness, even though the annexation statute of that time provided no substantive guidelines. *Id.* at 155–56, 203 P.2d at 998–99. Second, our Supreme Court in *Mutz v. Municipal Boundary Commission,* 101 N.M. 694, 701–02, 688 P.2d 12, 19–20 (1984), rejected *Hughes,* saying, "[W]e do not perpetuate the rule applied in *Hughes* to annexation decisions." In any event, *Hughes* did not address the scope-of-review question we face on this appeal. The opinion did not consider the standard of review with respect to a contention that an express statutory requirement had not been satisfied.

Finally, the policy arguments advanced by the majority opinion in favor of deferential review of annexation decisions do not persuade me that courts should ignore the statutory requirement of contiguity. Perhaps municipalities will ordinarily make sound decisions regarding annexation, or at least they will ordinarily perform better than any court that presumed to second-guess the municipality's evaluation of the public interest. *See generally* Clayton P. Gillette, *Expropriation and Institutional Design in State and Local Government Law,* 80 Va.L.Rev. 625 (1994). But when the legislature has enacted restrictions on a municipality's decision whether to annex territory, the judiciary should not impose its view that municipalities should be limited only by the constitution. It would be an abdication of responsibility and an abuse of office for a court to say, "We believe that municipalities can handle these matters well enough on their own, so we will not examine whether statutory requirements have been satisfied."

In short, this Court has no choice. The legislature permits annexation only of contiguous territory. We must decide the meaning of the statutory requirement and whether the requirement has been satisfied in this case.

### B. *Sham*

On its face, the contiguity requirement is a straightforward one. I see no reason to give the word "contiguous" a meaning other than its ordinary meaning of "bordering" or "adjacent." My research of the case law has not revealed a special meaning of the word "contiguous" in the context of municipal annexation. In particular, it does not appear that "contiguous" has been generally held to incorporate such notions as "community of interest."

One's initial reaction may be that adoption of this definition ends virtually all dispute regarding application of the statutory requirement. If the annexed territory borders

or adjoins the municipality, then presumably the contiguity requirement is met, regardless of any other features of the annexation. But adoption of such an approach could eviscerate the contiguity requirement. This conclusion follows from a consideration of the procedure for annexation by petition.

A municipality may annex territory if the territory is contiguous to the municipality and the owners of a majority of the acreage of the territory sign a petition seeking annexation. Section 3–7–17(A). (For present purposes, I can ignore the requirements that the petition be accompanied by a map and be presented to the governing body of the municipality.) What if the owner of a parcel not contiguous to the municipality wishes to be annexed by the municipality and the governing body of the municipality shares in that desire? No problem. Just include in the petition a little bit of land owned by others. The land would be a strip leading from the municipality to the non-contiguous parcel. Even if the owner or owners of the connecting strip oppose the annexation, their total acreage can be kept below the acreage of the non-contiguous parcel simply by making the connecting strip sufficiently narrow. Consequently, the owners of the majority of the acreage to be annexed would favor annexation. Because of this possibility, the contiguity requirement becomes a paper tiger. It imposes no constraint on an annexation if the governing body of the municipality and the owner of the non-contiguous parcel want the annexation to take place.

To avoid such evisceration of the contiguity requirement, the annexation statute must be read as prohibiting an annexation when contiguity is achieved by a sham or subterfuge. There is nothing remarkable in so reading the annexation statute. As Justice Jackson has written, a "statute[ ] can and should be applied to strike down sham and artifice intended to evade its commands." *Walling v. Portland Terminal Co.*, 330 U.S. 148, 154, 67 S.Ct. 639, 642, 91 L.Ed. 809 (1947) (Jackson, J., concurring.)

Moreover, there is nothing remarkable about applying this proposition in the context of annexation. Several courts apparently have rejected annexations on just this ground. *E.g., Potvin v. Village of Chubbuck*, 76 Idaho 453, 284 P.2d 414, 417–18 (1955); *Wild v. People ex rel. Stephens*, 227 Ill. 556, 81 N.E. 707, 708 (1907); *Reafsnyder v. City of Warsaw*, 155 Ind.App. 455, 293 N.E.2d 540, 545 (1973); *Ridings v. City of Owensboro*, 383 S.W.2d 510, 511–12 (Ky.1964).

The "sham" rule prohibits an annexation if what the municipality is really doing is annexing a non-contiguous parcel by using a connecting strip which is included in the annexation *solely* for the purpose of achieving contiguity. Although application of the rule may sometimes be difficult, there is no reason why application of the rule should involve the courts in municipal policy-making. The issue is not whether there is a *good* municipal purpose for annexing the connecting strip; it is only whether there is a plausible municipal purpose other than achieving contiguity. (I should add, however, that there is no reason to require a municipal purpose if the owners of the connecting strip approve of the annexation. In that event there is no sham or subterfuge: The owners of the connecting strip could petition for annexation; and once their land was annexed, there would be no contiguity problem with annexing the parcel that had been non-contiguous. *See City of Bettendorf v. Abeln*, 261 Iowa 404, 154 N.W.2d 836, 844 (1967) (if annexation may be accomplished properly in two steps, it may be accomplished all at once); *cf. Mutz*, 101 N.M. at 698, 688 P.2d at 16.)

What is remarkable in this case is that Carlsbad has offered absolutely no municipal purpose for annexing the property owned by Plaintiffs. Plaintiffs' affidavits are uncontradicted in their assertions that no purpose is served by annexing their land. Also, Plaintiffs make clear that they oppose the annexation of their land. Perhaps there is a municipal purpose for the annexation of Plaintiffs' land (a purpose other than to provide contiguity for the Forrest Property), but the City chose not to defend the annexation on that ground. Thus, on this record a finding of sham or subterfuge is required. Although remand might now be appropriate to enable the City to show a municipal purpose (assuming that the City could not have anticipated

the adoption of a "sham" rule), the majority's decision makes it unnecessary to consider that issue.