858 P.2d 86

**CITIZENS FOR INCORPORATION, INC., and Jean Rodgers, Petitioners–Appellants,**

v.

**BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF BERNALILLO, Respondents–Appellees,**

and

**George Walker, Robert Si Nanninga, and Clara Louise Nanninga, Intervenors–Appellees.**

No. 13061.

Court of Appeals of New Mexico.

June 2, 1993.

Certiorari Denied July 20, 1993.

Anthony J. Ayala, Albuquerque, for petitioners-appellants.

William J. Darling, Margaret P. Armijo, William J. Darling & Associates, P.A., Albuquerque, for respondents-appellees.

K. Lee Peifer, Freedman, Boyd, Daniels, Peifer, Hollander, Guttmann & Goldberg,

P.A., Albuquerque, for intervenors-appellees.

## OPINION

APODACA, Judge.

Petitioners Citizens for Incorporation, Inc., and Jean Rodgers (collectively referred to as Petitioners) appeal a judgment of the district court affirming the decision of the Bernalillo County Board of Commissioners (Board) to refuse Petitioners' request that an incorporation election be held. Petitioners raised three issues on appeal, two of which we have consolidated as one issue: whether the district court (1) correctly upheld the Board's decision to deny Petitioners' request for an election on incorporation, and (2) properly dismissed Petitioners' claim that they should be reimbursed for the cost of conducting a census of the area proposed for incorporation.

Because the issues on appeal raised the question of the appropriate standard this Court should use in reviewing the Board's action, we requested the parties to provide supplemental briefs addressing this standard of review question. Having considered the supplemental briefs, we now determine that the focus of our review should be, not on the Board's decision, but on the district court's decision and findings.

We hold that the district court properly (1) upheld the Board's decision because Petitioners' petition did not comply with the pertinent statutory requirement, and (2) denied Petitioners' claim for reimbursement because Petitioners were required to provide the funds for a census. We thus affirm the district court's decision. We deny Petitioners' motion contained in their supplemental brief for permission to file an additional brief.

## BACKGROUND

In 1989, Petitioners filed with the Board a petition and map for incorporation of an area known as Albuquerque's "South Valley." The petition stated:

WE the undersigned, as qualified electors who have resided within the territory described below for a period of six months or more prior to signing this petition, declare our intent to incorporate all of the unincorporated territory not presently in the City of Albuquerque and described as follows:

Beginning at the southwest corner of the sect. 26, T1ON, R2E, then north along section line to the Albuquerque City Limits at Bridge Blvd. SW, then east on Bridge Blvd. to the point where the Albuquerque City Limits turn north, then north and east following the city limits to the Rio Grande, then south following City Limits along the Rio Grande, then east across Rio Grande following City Limits to west right-of-way of I-25, then south along I-25 to its intersection with Broadway SW then south to the north boundary of the Isleta Indian Reservation, then west along north boundary of Isleta Indian Reservation to west side of sect. 3, T8N, R2E, then north on sect. line to north boundary of the Pajarito Land Grant, then east on Land Grant boundary to west side of sect. 16, T9N, R2E, then north to northwest corner of sect. 16, then east to northeast corner of sect. 16, then north along section line to the Albuquerque City Limits at Flora Vista SW, then east along Albuquerque City Limits to Coors Rd. SW, then south following Albuquerque City Limits to point of beginning.

This incorporated area shall be known as Las Plazas del Valle in accordance with the attached map.

PRINTED NAME SIGNATURE STREET ADDRESS

(as it appears on voter registration records)

[Signature lines deleted.]

A map of the area intended to be incorporated was printed in the back of the petition. The petition was signed by 1,863 people; the Bernalillo County Clerk certified that 883 of the signatures were valid.

On April 25, 1989, the Board voted to require a census of the area proposed for incorporation. On May 9, 1989, Petitioners filed their original complaint in the district court, appealing the Board's decision to require a census. Nonetheless, a census

paid for by Petitioners was performed and the results submitted to the Board on September 19, 1989. By letter dated October 3, 1989, the district court requested the parties to address the issue of whether the controversy was now moot because a census had been taken. The record does not reflect the parties' response to this letter. On October 4, 1989, after discussion, the Board voted not to allow an election on the issue of incorporation on the basis that the petition for incorporation did not meet the statutory requirements for an incorporation petition. *See* NMSA 1978, § 3-2-1 (Repl.Pamp.1987). On October 12, 1989, Petitioners moved to amend their complaint. The amended complaint requested a declaration that Petitioners were not required to conduct a census, a refund of the funds paid to conduct the census, and a court order that the election be conducted. On October 27, 1989, Petitioners filed in district court a second notice of appeal and petition for review of the Board's decision. George Walker, Clara Louise Nanninga, and Robert Si Nanninga (collectively referred to as Intervenors) moved to intervene in the second action, requesting a declaratory judgment from the district court that the relevant statutes were unconstitutional. This motion to intervene was granted and the two actions were consolidated.

Petitioners and Intervenors later filed separate motions for summary judgment, which were consolidated. The hearing on the consolidated motions was transmuted into a hearing on the merits when the district court and counsel for the parties agreed that there were no disputed facts and that an evidentiary hearing was unnecessary. Subsequently, the district court entered a final judgment dismissing Petitioners' complaint and upholding the validity of the Board's action. This appeal followed.

## DISCUSSION

### I. *Standard of Review.*

Because the issue of what standard of review should be applied to a board of county commissioners' decision to deny a petition to hold an election on incorporation was one of first impression in New Mexico, we requested the parties to provide supplemental briefs addressing this issue.

In its supplemental brief, the Board argues that the appropriate standard of review is the deferential standard applied to legislative actions because actions involving the creation and extension of municipal boundaries are functions of the legislative power. *See Torres v. Village of Capitan,* 92 N.M. 64, 69, 582 P.2d 1277, 1282 (1978). Additionally, it argues that the type of decision made here falls squarely within the definition of a legislative decision as stated in *Dugger v. City of Santa Fe,* 114 N.M. 47, 51, 834 P.2d 424, 428 (Ct.App.), *writ quashed,* 113 N.M. 744, 832 P.2d 1223 (1992). It further claims that, whichever standard of review is applied, the Board's decision should be upheld.

Petitioners argue in their supplemental brief that, although a legislative standard apparently applies because incorporation of municipalities, like annexation, lies within the authority of the legislature, *see Leavell v. Town of Texico,* 63 N.M. 233, 235, 316 P.2d 247, 248 (1957), the Board's duty under Section 3-2-1 is quasi-judicial, *see Dugger,* 114 N.M. at 50, 834 P.2d at 427 (describing the trappings often associated with quasi-judicial action), and thus the administrative standard of review applies. *See Perkins v. Department of Human Servs.,* 106 N.M. 651, 655, 748 P.2d 24, 28 (Ct.App.1987). Petitioners likewise argue that, whichever standard is applied, the Board's refusal to call an election was improper.

■ The Board's decision is not clearly legislative or administrative in nature. Although the Board is clearly a legislative body and generally a decision regarding municipal boundaries is legislative in nature, *see, e.g., Torres,* 92 N.M. at 69, 582 P.2d at 1282, here the statute requires the Board not to determine whether or not to incorporate but, rather, to review a petition and determine if certain statutory criteria have been met before ordering an election. *See Dugger,* 114 N.M. at 50, 834 P.2d at 427. However, we find it unnecessary to determine the appropriate standard of re-

view of the Board's decision in this case because we agree with Intervenors' supplemental brief that the focus of our appellate review should be on the district court's decision, not on that of the Board.

■ The district court apparently applied the arbitrary-and-capricious standard of review to the Board's action. Because we determine that the district court's findings that the petition did not comply with the statutory requirements was supported by substantial evidence, the Board's decision would be upheld under either standard of review. *Compare id.* at 53, 834 P.2d at 430 (discussing deferential "reasonableness" standard of review as applied to city council's decision to deny petition for annexation) *with Mutz v. Municipal Boundary Comm'n,* 101 N.M. 694, 697, 688 P.2d 12, 15 (1984) (applying administrative standard of review to decision of the Boundary Commission). Under either standard, the court does not make an independent inquiry into the wisdom of the decision or substitute its judgment for that of the decision-maker below. *Dugger,* 114 N.M. at 53, 834 P.2d at 430; *Mutz,* 101 N.M. at 697, 688 P.2d at 15. Therefore, under the facts of this case, we assume, but do not decide, that reviewing the Board's decision under the standard of *Perkins* was proper.

■ Petitioners argue that the district court exceeded its jurisdiction because it made findings that had not been explicitly made by the Board, and point to the language of NMSA 1978, Section 3–2–5(F) (Repl.Pamp.1987). That statute states that "[t]he signers of the [incorporation] petition … may appeal *any determination* of the board of county commissioners to the district court." *Id.* (emphasis added). Petitioners contend that the findings made by the district court went beyond those made by the Board. We disagree that the district court exceeded its jurisdiction in making more-specific findings. It properly reviewed the Board's determination that the petition did not meet the statutory requirements. *See City of Pascagoula v. Scheffler,* 487 So.2d 196, 200 (Miss.1986) ("The power vested in the chancery court is the judicial function of deciding that a petition

[for incorporation] is sufficient and that the statutory jurisdictional requirements have been met."). Additionally, as discussed below, the statutory prerequisites to incorporation are jurisdictional and can be raised at any time. *See State ex rel. Clancy v. Porter,* 23 N.M. 508, 512, 169 P. 471, 472 (1917).

## II. *The District Court Properly Determined that the Petition Did Not Comply with the Statutory Requirements.*

At the close of the October 4 meeting, the Board voted four to one that "all the requirements of the New Mexico State Statute have not been met to the satisfaction of … the Bernalillo County Commission." The district court held that:

> The refusal to order an election for the proposed municipality of [Las] Plazas del Valle was appropriate because both the petition for incorporation and the map attached to the petition are deficient. The petition failed to comply with [the] provisions of N.M.Stat.Ann. §§ 3—1–5(C)(4) [sic] and 3–2–1(A)(4)(a) (1978 Comp.), in that the requisite language concerning a penalty statement and an oath or affirmation was absent from the petition. The map attached to the petition failed to rise to the level of an accurate map or plat by which the acreage or boundaries of the proposed land to be incorporated might be determined.

■ Petitioners argue that the Board's failure to indicate at earlier meetings that the petition was deficient estops the Board from litigating the sufficiency of the petition. However, it is well established in New Mexico that the filing of a proper petition for incorporation is jurisdictional and objections to the petition's sufficiency may be raised at any time. *State ex rel. Clancy,* 23 N.M. at 512, 169 P. at 472. An incorporation attempted under a petition that does not comply with the statutory prerequisites is null and void. *Id.* This principle is the basis for the general rule in other jurisdictions that strict compliance with the statutory prerequisites to incorporation is required. *See, e.g., In re Village*

*of Frankfort Square*, 166 Ill.App.3d 146, 116 Ill.Dec. 653, 657, 519 N.E.2d 721, 725 (1988); *Donald v. City of Glenview*, 723 S.W.2d 861, 863 (Ky.Ct.App.1986); *Friendship Village v. State*, 738 S.W.2d 12, 13–14 (Tex.Ct.App.1987). We thus conclude that the Board was not estopped from denying the petition or litigating its deficiencies by the Board's failure to point out the defects at an earlier stage of the proceedings.

■ Additionally, Petitioners allege that the county clerk's filing of the map and petition was prima facie evidence that the petition was acceptable and approved. However, the final decision concerning whether the petition met the statutory requirements rested with the Board, not with the county clerk. *See* § 3–2–5(C). Thus, we decline to hold that the acceptance of the petition by the county clerk established that the petition met the statutory requirements.

The applicable statute states in part:

A. The residents of territory proposed to be incorporated as a municipality may petition the board of county commissioners of the county, in which the greatest portion of the territory proposed to be incorporated lies, to incorporate the territory as a municipality. The petition shall:

. . . .

(4) be signed by . . .:

(a) not less than two hundred qualified electors, each of whom shall, on the petition, 1) swear or affirm that he has resided within the territory proposed to be incorporated for a period of six months immediately prior to the signing of the petition and 2) list the street address of his residence; or

. . . .

B. The petition shall be accompanied by:

(1) an accurate map or plat which shall show the boundary of the territory proposed to be incorporated; and

(2) money in an amount determined by the board of county commissioners to be sufficient to conduct a census in the territory proposed to be incorporated. The money shall be deposited with the county treasurer for payment of the census required in Section 3–2–5 NMSA 1978.

Section 3–2–1.

The district court found that the petition offered by Petitioners was deficient in two respects: (1) the signers did not "swear or affirm" on the petition that they were residents for the previous six months of the area proposed to be incorporated, *see* § 3–2–1(A)(4)(a)(1), and (2) the attached map was not accurate, *see* § 3–2–1(B)(1). We agree.

■ Section 3–2–1(A)(4)(a)(1) requires signers of the petition to "swear or affirm" that they are residents of the area proposed to be incorporated. A sworn statement is one made under penalty of perjury. *See* NMSA 1978, § 14–13–1 (Repl.Pamp.1988); NMSA 1978, § 30–25–1 (Repl.Pamp.1984); 58 Am.Jur.2d *Oath and Affirmation* § 7 (1989). An affirmation substitutes for a sworn statement when the person has conscientious scruples against taking an oath. NMSA 1978, § 14–13–2 (Repl.Pamp.1988). However, it too is made under penalty of perjury. *Id.* The petition does not contain any language indicating that persons who provide false information on the petition might be subject to the penalty of perjury. The petition also fails to include the statement that any person knowingly giving false information on the petition is guilty of a fourth degree felony, as required by NMSA 1978, Section 3–1–5(C)(4) (Repl.Pamp.1987).

■ Petitioners argue that the "positive statement" contained in the petition was substantial compliance with the requirement that signers "swear or affirm" their residency. We disagree. There is no indication on the petition that the giving of false information was perjurious. Additionally, Petitioners argue that the requirement is not very important because the persons whose signatures were disallowed were not prosecuted for perjury. However, the function of the court is to determine and give effect to the legislative intent, *Wellborn Paint Mfg. Co. v. New Mexico Employment Sec. Dep't*, 101 N.M. 534,

537, 685 P.2d 389, 392 (Ct.App.1984), not to question the wisdom of the legislature's requirements. *See McGeehan v. Bunch*, 88 N.M. 308, 310, 540 P.2d 238, 240 (1975).

Finally, Petitioners contend that a petition for incorporation need not comply with the requirements of Section 3–1–5 because it is superseded by the more-specific requirements of Section 3–2–1. *See, e.g., Production Credit Ass'n v. Williamson*, 107 N.M. 212, 213, 755 P.2d 56, 57 (1988) (more-specific statute considered exception to general statute and more-specific statute governs). However, this rule of statutory construction applies only when the statutory provisions are conflicting. *See State ex rel. Stratton v. Gurley Motor Co.*, 105 N.M. 803, 805, 737 P.2d 1180, 1182 (Ct. App.), *cert. denied*, 105 N.M. 781, 737 P.2d 893 (1987). If the statutes can be harmonized so that each can be given effect, this Court should do so. *Id.* In this appeal, there is no conflict between Sections 3–1–5 and 3–2–1. Additionally, Section 3–1–5(A) states that it applies to petitions that trigger municipal special or general elections under the Municipal Code, NMSA 1978, Chapter 3, "except as otherwise expressly provided by law." Section 3–2–1 does not specify that incorporation petitions are exempt from the requirements of Section 3–1–5. Accordingly, we construe Section 3–2–1 as providing for additional requirements for petitions for incorporation, and not as superseding those of Section 3–1–5.

The district court also correctly concluded that the map accompanying the petition was not "an accurate map or plat" as required by Section 3–2–1(B)(1). A map is insufficient for incorporation purposes if people are misled or cannot determine whether their property is included in the area proposed to be incorporated. *See Taylor v. Pile*, 154 Colo. 516, 391 P.2d 670, 674 (1964) (en banc). The map attached to the petition is a rough sketch drawn by hand on an essentially inaccurate scale that reduces entire sections of land to half-inch squares. Hand-lettering on the map states that 35,600 acres are included within a territory described as "all area not in city limits from Central Ave. to Isleta Indian Reservation, from I–25 freeway to city limits west of Coors along section lines to Isleta Reservation." In addition, there is uncontroverted expert evidence in the record that "it is not possible [from the map] to accurately determine boundaries from [the map] or to accurately determine the acreage contained within such boundaries." Finally, because the map cannot be used to determine boundaries, it cannot be reconciled with the description contained in the petition so that persons reviewing the map and petition can determine with certainty whether their property is to be included or excluded from the proposed municipality.

Relying on *People ex rel. Village of Worth v. Ihde*, 23 Ill.2d 63, 177 N.E.2d 313, 315 (1961), Petitioners argue that the map was sufficient because, when combined with the description contained in the petition, it fairly apprised the public of the property involved. We are not persuaded by this argument. The statutory requirements that the petition contain a written description and an accurate map are separate and distinct. *See* § 3–2–1(A)(3) & (B)(1). This Court will apply the statutory language as written unless it is ambiguous. *See Johnson v. Francke*, 105 N.M. 564, 566, 734 P.2d 804, 806 (Ct.App.1987). We thus conclude that the legislature intended both requirements to be complied with. Additionally, the requirement that the map itself be accurate and fairly apprise the public of the property to be included in the proposed municipality is reasonable because not all members of the public will necessarily understand the legal description of the proposed municipality. We therefore decline to follow *Ihde.*

We thus hold that the district court properly determined that the petition did not meet the statutory requirements. In light of this conclusion, we necessarily also reject Petitioners' contention, which relies on *McManus v. Skoko*, 255 Or. 374, 467 P.2d 426, 428 (1970), that the district court denied area residents the right to vote for improper political reasons. *See also* 56 Am.Jur.2d *Municipal Corporations, Counties, and Other Political Subdivi-*

*sions* § 31 (1971) ("[P]ower to vote upon the acceptance of the [municipal] charter is a privilege and not an inherent right.").

### III. *The District Court Properly Dismissed Petitioners' Request for a Refund of the Money Spent Conducting a Census.*

Petitioners argue that the district court incorrectly dismissed its claim for a refund of the money it spent to have a census conducted.

 When construing a statute, the entire act is to be read together so that each provision is to be considered in relation to the others. *Winston v. New Mexico State Police Bd.*, 80 N.M. 310, 311, 454 P.2d 967, 968 (1969). When Article 2 of the Municipal Code, NMSA 1978, Chapter 3, is read as a whole, it is clear that the funds for a census were required and that Petitioners were required to provide them. Section 3-2-1(B)(2) requires that the petition for incorporation be accompanied by payment for a census. Section 3-2-5(B)(2) requires that a census be taken. There is no provision allowing a refund of or reimbursement for such expenses if the petition is not granted.

 Petitioners argue that they should be reimbursed because NMSA 1978, Section 3-2-4 (Repl.Pamp.1987) relieves them of the burden of conducting a new census. Instead, Petitioners contend, the pertinent statute permitted them to rely on the last decennial census. Section 3-2-4 states:

> Notwithstanding any provisions of Sections 3-2-3, 3-2-5 and 3-57-9 NMSA 1978 to the contrary, the residents of a contiguous, undivided territory within a class A county may incorporate that territory into a new municipality with boundaries closer than five miles to or coterminous with the boundary of an existing municipality *by following all other provisions of the law governing incorporation*, if the territory proposed to be incorporated has a population, as shown by the last decennial census, of fifteen thousand or more. (Emphasis added.)

We do not read Section 3-2-4 as supplanting NMSA 1978, Section 3-2-3

(Repl.Pamp.1987); Section 3-2-5; or NMSA 1978, Section 3-57-9 (Repl.Pamp.1984). We note that all three of these statutes require persons attempting to form a local government body or incorporate within five miles of an existing municipality to obtain that municipality's permission. *See* §§ 3-2-3(B)(1), 3-2-5(B)(2) & 3-57-9. Thus, we conclude that Section 3-2-4 is an exception to this requirement that allows residents of an area within five miles of or coterminous with an existing municipality in a class A county to incorporate without complying with Section 3-2-3(B) if the area proposed for incorporation has a population of 15,000 persons or more. The last decennial census is used only to initially determine whether the area has a population of 15,000 or more so that the incorporators can determine if they must comply with Section 3-2-3(B). Additionally, Section 3-2-4 states that it is an exception only to "contrary" provisions and further explicitly states that residents of such an area must comply with "all other provisions of the law governing incorporation." That would include payment for a new census as required by Sections 3-2-1(B)(2) and 3-2-5(B)(2). The requirement that a new census be conducted before an incorporation election is held is not "contrary" to Section 3-2-4.

 Petitioners argue that NMSA 1978, Section 3-2-2 (Repl.Pamp.1987) does not impose any requirement that a census be conducted and further argue that the legislature's 1991 amendment to Section 3-2-2 to allow reliance on the 1990 decennial census indicates that Petitioners were entitled to rely on the 1980 federal census and not conduct a new one. The version of Section 3-2-2 in effect when Petitioners filed their petition for incorporation stated that "[a]ny territory proposed to be incorporated as a municipality shall: A. not be within the boundary of another municipality; B. have a population density of not less than one person per acre; and C. contain not less than one hundred fifty persons." In 1991, the legislature amended Subsection B. The requirement that the area proposed for incorporation have a population density of

one person per acre was modified to allow an exception for class B counties that in 1990 had a net taxable value of property of more than $95,000,000 and a population of less than 10,000 according to the 1990 federal decennial census. Section 3–2–2(B) (Cum.Supp.1991). An area in such a county can incorporate with a population density of only one person per four acres. *Id.* Thus, either version of Section 3–2–2 merely sets out the characteristics required of any territory proposed to be incorporated; it does not address the incorporation proceedings themselves. As already noted, under Section 3–2–1(B)(2), a petition for incorporation must be accompanied by money for a census of the proposed area for incorporation. This money is used to conduct the census required by Section 3–2–5(B)(2). The 1991 amendment to Section 3–2–2 does not indicate that the legislature intended to eliminate the requirement of conducting a new census of the proposed area for incorporation; it merely indicates the legislature's conclusion that the most-recent federal decennial census was adequate for making certain initial determinations.

"We ought not read language into [a] statute where ... the statute makes sense as written." *Wellborn Paint Mfg.*, 101 N.M. at 539, 685 P.2d at 394. It is not unreasonable for the legislature to determine that the most-recent federal decennial census was adequate for making preliminary determinations but that a current census was desirable for making the final decision. We thus decline to add language to the statutes as proposed by Petitioners.

 Additionally, we have uncovered no statutory authority for the proposition that the Board was required either to pay for the census or to refund the money paid by Petitioners for the census. Petitioners, as the parties requesting the incorporation, were required to provide the funds for the census. *See* § 3–2–1(B)(2). We thus conclude that the district court properly dismissed Petitioners' request that it order the Board to refund the money paid for the census.

IV. *Petitioners' Request for a Determination that the Census Can Be Used with a Subsequent Petition.*

The issue of whether the census conducted in connection with this petition can be used in conjunction with another petition for incorporation is not properly before this Court because no such additional petition has been presented to the Board. We therefore decline to consider this argument.

## CONCLUSION

We hold that the district court did not err in upholding the Board's decision to deny Petitioners' request for an election on incorporation because the petition and map did not comply with the statutory requirements. We also hold that the district court correctly concluded that the Board properly required a new census to be paid for by Petitioners. We therefore affirm the district court's judgment.

**IT IS SO ORDERED.**

BIVINS and FLORES, JJ., concur.